# EXHIBIT A

1  David Fernandes (SBN 280944)
   BARON & BUDD, P.C.
2  3102 Oak Lawn Avenue, Suite 1100
   Dallas, TX 75219
3  Tel.: (214) 521-3605
   Fax: (214) 279-9915
4  Email: dfernandes@baronbudd.com

Electronically FILED by
Superior Court of California,
County of Los Angeles
7/23/2025 2:12 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By J. Nunez, Deputy Clerk

5  *Counsel for Plaintiffs*

6              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

7                        **COUNTY OF LOS ANGELES**

8  ANN BOZZI, DAVID ABEND, AZIZ          CASE NO. _25STCV21789_
   AHMAD, ANDREW ALVAREZ, JEREMY
9  AMARILLAS, BERNIE AMBRIZ,             **COMPLAINT FOR DAMAGES AND**
   CHRISTOPHER BALDEON, WILLIAM          **DEMAND FOR JURY TRIAL**
10 BALSBAUGH, JUSTIN BALTAU, GLENN
   BARGER, LEROY BARKER, ANDREW          (1) Strict Liability Design Defect- Consumer
11 BARROW, DIANE BAUMANN, PAUL           Expectation Test
   BECKMAN, MANDY BELLELIE, IDA          (2) Strict Liability Design Defect- Risk
12 BLACKMAN, DINO BORTOLI, MICHAEL       Benefit Test
   BOWEN, JOHN BREAKFIELD, LARRY         (3) Strict Liability Failure to Warn
13 BUENO, LUIS BUSTAMANTE III, WAYNE     (4) Negligence- Duty to Warn
   CAMPBELL, VICTOR CANALES, JUAN        (5) Negligence- Failure to Recall
14 CARRILLO, ELLIOTT CARTER, DAVID       (6) Violation of the Uniform Voidable
   CARTER, CASSANDRA CASTILLO, CHER      Transfer Act
15 CENDEJAS PENCE, RUBY CHAVEZ,          (7) Civil Conspiracy
   DAVID CHAVEZ, JEROME CHENG,
16 MARILYN CINOLLO, DONALD CLARK,
   MATTHEW COFFEY, JEFFREY COOLEY,
17 ROBERT COOLIDGE, JAVIER
   CORROCHANO, LISA CURL, STEPHEN
18 DABASINSKAS, MICHAEL DAVID,
   CRAIG DAVIS, MURRAY DEFORD III,
19 DOUGLAS DOCKSTADER JR., EDWARD
   DOYLE JR., RICHARD DYER, DONALD
20 ETHERIDGE JR., SHIRLEY FERNANDEZ,
   DAVID FONTAN, BARBARA FORTNER,
21 CARLOS GUZMAN, DIANA HECHT,
   EDWARD HEINS, THOMAS
22 HERNANDEZ, NICHOLAS HERNANDEZ,
   HARRY HICKS, MATTHEW HOLBROOK,
23 TIMOTHY HORNING JR., DAVID
   JACKEL, MICHAEL JAMES, WESLEY
24 JOHNSON, ARTHUR JOHNSTON IV,
   COREY JONES, ERIC KABEL, KEVIN
25 KAHN, JIMMY KELLEY, ERIC KOPS,
   ROBERT LAMB, ELISA LASTER, CURTIS

1  LEEDY, SAMUEL LEIVA JR., SALVADOR
LOPEZ, ALAN MILLER, GARY MILLION,
2  ALIREZA MORTAZAVI, CHRISTINA
OLIN, THOMAS PEN, BRIAN PHILLIPS,
3  MICHAEL PRETE, ARTURO RAMIREZ,
JOSE RAMIREZ-SERNA, BRANDON
4  REDD, HECTOR REYES, JOHNNIE RICO,
ROBERT RODRIGUEZ, LIONEL
5  RODRIGUEZ, MONICA ROGERS-KELLY,
MARIO ROJAS JR., TYLER RUIZ, RAY
6  SANCHEZ, JOHN SHEPARD, AND JACOB
TENCZAR,
7

8

9  Plaintiffs,

10  vs.

11  3M COMPANY (f/k/a Minnesota Mining and
Manufacturing, Co.); AGC CHEMICALS
12  AMERICAS, INC.; AGC, INC. (f/k/a Asahi
Glass Co., Ltd.);  ARCHROMA U.S., INC.;
13  ARKEMA, INC.; BASF CORPORATION;
BUCKEYE FIRE EQUIPMENT CO.;
14  CHEMDESIGN PRODUCTS, INC.;
CHEMGUARD, INC.; CLARIANT
15  CORPORATION; CORTEVA, INC.;
DUPONT DE NEMOURS, INC.; DYNAX
16  CORPORATION; E.I. DU PONT DE
NEMOURS AND COMPANY; THE
17  CHEMOURS COMPANY; THE
CHEMOURS COMPANY FC, LLC; TYCO
18  FIRE PRODUCTS, LP, AND JOHN DOE
DEFENDANTS 1-49,
19

20  Defendants.

21  **COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

22

23      COME NOW Plaintiffs, Ann Bozzi, David Abend, Aziz Ahmad, Andrew Alvarez, Jeremy

24  Amarillas, Bernie Ambriz, Christopher Baldeon, William Balsbaugh, Justin Baltau, Glenn Barger,

25  LeRoy Barker, Andrew Barrow, Diane Baumann, Paul Beckman, Mandy Bellelie, Ida Blackman,

26  Dino Bortoli, Michael Bowen, John Breakfield, Larry Bueno, Luis Bustamante III, Wayne

27  Campbell, Victor Canales, Juan Carrillo, Elliott Carter, David Carter, Cassandra Castillo, Cher

28  Cendejas Pence, Ruby Chavez, David Chavez, Jerome Cheng, Marilyn Cinollo, Donald Clark,

1   Matthew Coffey, Jeffrey Cooley, Robert Coolidge, Javier Corrochano, Lisa Curl, Stephen
2   Dabasinskas, Michael David, Craig Davis, Murray DeFord III, Douglas Dockstader Jr., Edward
3   Doyle Jr., Richard Dyer, Donald Etheridge Jr., Shirley Fernandez, David Fontan, Barbara Fortner,
4   Carlos Guzman, Diana Hecht, Edward Heins, Thomas Hernandez, Nicholas Hernandez, Harry
5   Hicks, Matthew Holbrook, Timothy Horning Jr., David Jackel, Michael James, Wesley Johnson,
6   Arthur Johnston IV, Corey Jones, Eric Kabel, Kevin Kahn, Jimmy Kelley, Eric Kops, Robert
7   Lamb, Elisa Laster, Curtis Leedy, Samuel Leiva Jr., Salvador Lopez, Alan Miller, Gary Million,
8   Alireza Mortazavi, Christina Olin, Thomas Pen, Brian Phillips, Michael Prete, Arturo Ramirez,
9   Jose Ramirez-Serna, Brandon Redd, Hector Reyes, Johnnie Rico, Robert Rodriguez, Lionel
10  Rodriguez, Monica Rogers-Kelly, Mario Rojas Jr., Tyler Ruiz, Ray Sanchez, John Shepard, and
11  Jacob Tenczar by and through undersigned counsel, and bring this action against Defendants 3M
12  Company (f/k/a Minnesota Mining and Manufacturing, Co.), AGC Chemicals Americas, Inc.,
13  AGC, Inc. (f/k/a Asahi Glass Co., Ltd.), Archroma U.S., Inc., Arkema Inc., BASF Corporation,
14  Buckeye Fire Equipment Company, Chemdesign Products, Inc., Chemguard, Inc., Clariant
15  Corporation, Corteva, Inc., DuPont De Nemours, Inc., Dynax Corporation, E.I. Du Pont de
16  Nemours and Company, The Chemours Company, The Chemours Company FC, LLC, Tyco Fire
17  Products, LP (individually and as successor-in-interest to The Ansul Company), and John Doe
18  Defendants 1-49.  Plaintiffs hereby allege, upon information and belief, as follows:

19          **I.      SUMMARY OF THE CASE**

20          1.      Plaintiffs bring this action against Defendants who manufactured aqueous film-
21  forming foam ("AFFF"), exposure to which resulted in Plaintiffs' serious personal injuries.  The
22  AFFF manufactured by Defendants contained per- and polyfluoroalkyl substances ("PFAS")
23  including, but not limited to, perfluorooctanoic acid ("PFOA") and/or perfluorooctane sulfonic
24  acid ("PFOS").

25          2.      PFOS and PFOA are fluorosurfactants that repel oil, grease, and water. PFOS,
26  PFOA, and/or their chemical precursors, are or were components of AFFF products, which are
27  firefighting suppressant agents used in training and firefighting activities for fighting Class B fires.
28  Class B fires include fires involving hydrocarbon fuels such as petroleum or other flammable

1   liquids.

2       3.      PFOS and PFOA are mobile, persist indefinitely in the environment, bioaccumulate

3   in individual organisms and humans, and biomagnify up the food chain.  PFOS and PFOA are also

4   associated with multiple and significant adverse health effects in humans, including but not limited

5   to kidney cancer, testicular cancer, high cholesterol, thyroid disease, ulcerative colitis, and

6   pregnancy-induced hypertension.

7       4.      At various times from the 1960s through today, Defendants designed,

8   manufactured, marketed, distributed, and/or sold AFFF products containing PFOS, PFOA, and/or

9   their chemical precursors, and/or designed, manufactured, marketed, distributed, and/or sold the

10  fluorosurfactants and/or perfluourinated chemicals contained in AFFF.

11      5.      This Complaint refers to AFFF, PFOA, PFOS, PFAS compounds, and

12  fluorosurfactants collectively as "Fluorosurfactant Products."

13      6.      Defendants manufactured, marketed and/or sold Fluorosurfactant Products with the

14  knowledge that firefighters would be exposed to these toxic compounds during fire protection,

15  training, and response activities even when the AFFF was used as directed and intended by the

16  manufacturer.

17      7.      Defendants manufactured, marketed and/or sold Fluorosurfactant Products with the

18  knowledge that PFAS are toxic, persist indefinitely, and would be routinely released into the

19  environment, including the drinking water supply, even when the AFFF was used as directed and

20  intended by Defendants.

21      8.      Due to the widespread PFAS contamination caused by Defendants'

22  Fluorosurfactant Products, including the contamination of Plaintiffs' drinking water supplies,

23  Plaintiffs have suffered serious personal injuries set forth in detail below. Plaintiffs' injuries are a

24  direct result of their exposure to the PFAS contamination present in their drinking water supplies.

25      9.      Plaintiffs, as residents and those who visited, worked, or resided in the

26  contaminated areas, have been unknowingly exposed for many years to dangerous PFAS levels.

27      10.     Plaintiffs' unwitting exposure to PFAS in their water supply as a result of

28  Defendants' conduct set forth below is the direct and proximate cause of Plaintiffs' injuries.

11.    Plaintiffs file this lawsuit to recover compensatory and all other damages, including but not limited to past and future (1) expenses for care, treatment and hospitalization incident to their injuries;  (2) compensation for physical pain and suffering;  (3) loss of income, wages, or earning capacity; (4) compensation for mental or emotional pain and anguish; (5) physical impairment; (6) loss of companionship and society;  (7) inconvenience; (8) loss of enjoyment of life; and (9) exemplary damages.

## II.    PARTIES

### A. Plaintiffs

12.    Plaintiff Ann Bozzi is a citizen and resident of Los Angeles, California. From approximately 1978 to 2025, Plaintiff Ann Bozzi was regularly exposed to PFAS through drinking water at residences in Redondo Beach, California; Venice, California; Los Angeles, California; and West Hollywood, California.

13.    On or about 2023, Plaintiff Ann Bozzi was diagnosed with kidney cancer in Los Angeles, California and subsequently underwent a radical left nephrectomy.

14.    Plaintiff David Abend is a citizen and resident of Fountain Valley, California. From approximately 1969 to 2025, Plaintiff David Abend was regularly exposed to PFAS through drinking water at residences and workplaces in Vance Air Force Base, Oklahoma; Randolph Air Force Base, Texas; March Air Reserve Base, California; Washington, District of Columbia; Live Oak, Texas; Fountain Valley, California; Irvine, California; Santa Ana, California; and Mission Viejo, California.

15.    On or about July 2013, Plaintiff David Abend was diagnosed with testicular cancer in Newport Beach, California and subsequently underwent a total left orchiectomy, chemotherapy, and radiation treatment.

16.    Plaintiff Aziz Ahmad is a citizen and resident of Vacaville, California. From approximately 1993 to 2017, Plaintiff Aziz Ahmad was regularly exposed to PFAS through drinking water at residences in Brooklyn, New York; Staten Island, New York; and Fairfield, California.

17.    On or about 2015, Plaintiff Aziz Ahmad was diagnosed with kidney cancer in

1    Vacaville, California and subsequently underwent an ablation.

2        18.    Plaintiff Andrew Alvarez is a citizen and resident of Ontario, California. From

3    approximately 1977 to 2025, Plaintiff Andrew Alvarez was regularly exposed to PFAS through

4    drinking water at residences and workplaces in Lakewood, California; Ontario, California; Chino,

5    California; and Colton, California.

6        19.    On or about December 2019, Plaintiff Andrew Alvarez was diagnosed with kidney

7    cancer in Fontana, California and subsequently underwent a partial right nephrectomy.

8        20.    Plaintiff Jeremy Amarillas is a citizen and resident of Yorba Linda, California.

9    From approximately 1971 to 2025, Plaintiff Jeremy Amarillas was regularly exposed to PFAS

10   through drinking water at residences in Fullerton, California; Yorba Linda, California; Anaheim,

11   California; and Corona, California.

12       21.    On or about 2013, Plaintiff Jeremy Amarillas was diagnosed with kidney cancer in

13   Fullerton, California and subsequently underwent a radical right nephrectomy and chemotherapy

14   treatment.

15       22.    Plaintiff Bernie Ambriz Jr. is a citizen and resident of Duarte, California. From

16   approximately 1976 to 2025, Plaintiff Bernie Ambriz Jr. was regularly exposed to PFAS through

17   drinking water at residences and schools in Duarte, California; Phoenix, Arizona; Glendale,

18   Arizona; Ontario, California; and Pomona, California.

19       23.    On or about March 2021, Plaintiff Bernie Ambriz Jr. was diagnosed with kidney

20   cancer in Los Angeles, California and subsequently underwent a partial left nephrectomy.

21       24.    Plaintiff Christopher Baldeon is a citizen and resident of Laguna Hills, California.

22   From approximately 1995 to 2019, Plaintiff Christopher Baldeon was regularly exposed to PFAS

23   through drinking water at residences in Mira Loma, California; Riverside, California; Moreno

24   Valley, California; Riverside, California; Fontana, California; Oceanside, California; San Diego,

25   California; Eastvale, California; and San Bernardino, California.

26       25.    On or about March 2025, Plaintiff Christopher Baldeon was diagnosed with

27   testicular cancer in Laguna Hills, California and subsequently underwent related treatment.

28       26.    Plaintiff William Balsbaugh is a citizen and resident of Lakeview, Arkansas. From

approximately 1971 to 2025, Plaintiff William Balsbaugh was regularly exposed to PFAS through drinking water at residences and workplaces in Harrisburg, Pennsylvania; Visalia, California; Tulare, California; and Lakeview, Arkansas.

27.     On or about September 2019, Plaintiff William Balsbaugh was diagnosed with kidney cancer in Visalia, California and subsequently underwent a left radical nephrectomy, retroperitoneal lymph node dissection, and immunotherapy treatment.

28.     Plaintiff Justin Baltau is a citizen and resident of Kuna, Idaho. From approximately 1999 to 2025, Plaintiff Justin Baltau was regularly exposed to PFAS through drinking water at residences in Fresno, California; Clovis, California; Santa Clarita, California; Meridian, Idaho; and Kuna, Idaho.

29.     On or about May 19, 2011, Plaintiff Justin Baltau was diagnosed with testicular cancer in Santa Clarita, California and subsequently underwent a total left orchiectomy and chemotherapy treatment.

30.     Plaintiff Glenn Barger is a citizen and resident of Los Angeles, California. From approximately 1970 to 2025, Plaintiff Glenn Barger was regularly exposed to PFAS through drinking water at residences in Costa Mesa, California; Manhattan Beach, California; Malibu, California; Los Angeles, California; and La Quinta, California.

31.     On or about September 2024, Plaintiff Glenn Barger was diagnosed with kidney cancer in Santa Monica, California and subsequently underwent a partial left nephrectomy.

32.     Plaintiff LeRoy Barker is a citizen and resident of Buckeye, Arizona. From approximately 1970 to 1998, Plaintiff LeRoy Barker was regularly exposed to PFAS through drinking water at residences and workplaces in Sacramento, California; Roseville, California; and Granite Bay, California.

33.     On or about 1995, Plaintiff LeRoy Barker was diagnosed with thyroid disease. On or about 2011, Plaintiff LeRoy Barker was diagnosed with kidney cancer in Phoenix, Arizona and subsequently underwent a partial left nephrectomy and cryosurgery.

34.     Plaintiff Andrew Barrow is a citizen and resident of Irvine, California. From approximately 1994 to 2025, Plaintiff Andrew Barrow was regularly exposed to PFAS through

drinking water at residences and workplaces in Castle Pines, Colorado; Boulder, Colorado; West Hollywood, California; Playa Vista, California; Los Angeles, California; Burbank, California; Culver City, California; and Irvine, California.

35.     On or about July 2018, Plaintiff Andrew Barrow was diagnosed with testicular cancer in Beverly Hills, California and subsequently underwent a total right orchiectomy.

36.     Plaintiff Diane Baumann is a citizen and resident of Newark, California. From approximately 1970 to 2025, Plaintiff Diane Baumann was regularly exposed to PFAS through drinking water at residences and workplaces in Fremont, California; Lodi, California; and Newark, California.

37.     On or about 2020, Plaintiff Diane Baumann was diagnosed with kidney cancer in Fremont, California and subsequently underwent a radical left nephrectomy.

38.     Plaintiff Paul Beckman is a citizen and resident of Los Angeles, California. From approximately 1990 to 2024, Plaintiff Paul Beckman was regularly exposed to PFAS through drinking water at residences and workplaces in Houston, Texas; Ankeny, Iowa; Des Moines, Iowa; Sherman Oaks, California; Van Nuys, California; Panorama City, California; and Los Angeles, California.

39.     On or about September 2021, Plaintiff Paul Beckman was diagnosed with testicular cancer in Los Angeles, California and subsequently underwent a total right orchiectomy, retroperitoneal lymph node dissection, and chemotherapy treatment.

40.     Plaintiff Mandy Bellelie is a citizen and resident of Rialto, California. From approximately 1992 to 2025, Plaintiff Mandy Bellelie was regularly exposed to PFAS through drinking water at residences in Rialto, California and San Bernardino, California.

41.     On or about 2020, Plaintiff Mandy Bellelie was diagnosed with kidney cancer in Rialto, California and subsequently underwent a partial left nephrectomy.

42.     Plaintiff Ida Blackman is a citizen and resident of Fillmore, California. From approximately 1992 to 2025, Plaintiff Ida Blackman was regularly exposed to PFAS through drinking water at residences and workplaces in Ventura, California and Fillmore, California.

43.     On or about August 2021, Plaintiff Ida Blackman was diagnosed with kidney

cancer in Oxnard, California and subsequently underwent a partial left nephrectomy.

44. Plaintiff Dino Bortoli is a citizen and resident of Woodland Hills, California. From approximately 1986 to 2025, Plaintiff Dino Bortoli was regularly exposed to PFAS through drinking water at residences in Woodland Hills, California; Los Angeles, California; Santa Monica, California; and Venice, California.

45. On or about 2012, Plaintiff Dino Bortoli was diagnosed with testicular cancer in Los Angeles, California and subsequently underwent a total right orchiectomy.

46. Plaintiff Michael Bowen is a citizen and resident of Clovis, California. From approximately 1994 to 2025, Plaintiff Michael Bowen was regularly exposed to PFAS through drinking water at residences in Fort Jackson, South Carolina; Fort Ord, California; Clovis, California; and Fresno, California.

47. On or about May 2014, Plaintiff Michael Bowen was diagnosed with kidney cancer in Fresno, California and subsequently underwent a cryoablation.

48. Plaintiff John Breakfield is a citizen and resident of Stockton, California. From approximately 1967 to 2025, Plaintiff John Breakfield was regularly exposed to PFAS through drinking water at residences in Stockton, California.

49. On or about 2023, Plaintiff John Breakfield was diagnosed with clear cell renal carcinoma in San Francisco, California and subsequently underwent a radical right nephrectomy.

50. Plaintiff Larry Bueno is a citizen and resident of Hacienda Heights, California. From approximately 1969 to 2025, Plaintiff Larry Bueno was regularly exposed to PFAS through drinking water at residences and workplaces in Whittier, California; La Puente, California; and Hacienda Heights, California.

51. On or about April 2014, Plaintiff Larry Bueno was diagnosed with kidney cancer in Whittier, California and subsequently underwent a radical right nephrectomy.

52. Plaintiff Luis Bustamante III is a citizen and resident of Chino, California. From approximately 1975 to 2025, Plaintiff Luis Bustamante III was regularly exposed to PFAS through drinking water at residences and workplaces in Liberty Station, California; Naval Air Station Meridian, Mississippi; Naval Base San Diego, California; Long Beach Naval Station, California;

Long Beach, California; Ontario, California; Baldwin Park, California; and Chino, California.

53.    On or about September 2024, Plaintiff Luis Bustamante III was diagnosed with kidney cancer in Loma Linda, California and subsequently underwent a cryoablation.

54.    Plaintiff Wayne Campbell is a citizen and resident of Vancouver, California. From approximately 1980 to 2025, Plaintiff Wayne Campbell was regularly exposed to PFAS through drinking water at residences in West Covina, California; Diamond Bar, California; and San Dimas, California.

55.    On or about December 2016, Plaintiff Wayne Campbell was diagnosed with testicular cancer in Covina, California and subsequently underwent a total left orchiectomy.

56.    Plaintiff Victor Canales is a citizen and resident of Huntington Park, California. From approximately 1995 to 2025, Plaintiff Victor Canales was regularly exposed to PFAS through drinking water at residences in Huntington Park, California; Walnut Park, California; and Cudahy, California.

57.    On or about 2019, Plaintiff Victor Canales was diagnosed with testicular cancer in Downey, California and subsequently underwent a total left orchiectomy and chemotherapy treatment.

58.    Plaintiff Juan Carrillo is a citizen and resident of San Jose, California. From approximately 1975 to 2025, Plaintiff Juan Carrillo was regularly exposed to PFAS through drinking water at residences and workplaces in San Jose, California.

59.    On or about 2008, Plaintiff Juan Carrillo was diagnosed with kidney cancer in Santa Clara, California and subsequently underwent a radical right nephrectomy.

60.    Plaintiff Elliott Carter is a citizen and resident of Yuba City, California. From approximately 2008 to 2014, Plaintiff Elliott Carter was regularly exposed to PFAS through drinking water at residences and workplaces in Chico, California.

61.    On or about February 2016, Plaintiff Elliott Carter was diagnosed with testicular cancer in Yuba City, California and subsequently underwent a total left orchiectomy.

62.    Plaintiff David Carter is a citizen and resident of Winchester, Tennessee. From approximately 1970 to 2018, Plaintiff David Carter was regularly exposed to PFAS through

1   drinking water at residences in Placentia, California; Corona, California; Cleveland, Ohio; and

2   Humble, Texas.

3       63.     On or about February 2008, Plaintiff David Carter was diagnosed with testicular

4   cancer in Saint Louis, Missouri and subsequently underwent a total left orchiectomy.

5       64.     Plaintiff Cassandra Castillo is a citizen and resident of Clovis, California. From

6   approximately 2012 to 2025, Plaintiff Cassandra Castillo was regularly exposed to PFAS through

7   drinking water at residences and workplaces in Fresno, California and Clovis, California.

8       65.     On or about August 2024, Plaintiff Cassandra Castillo was diagnosed with kidney

9   cancer in Fresno, California and subsequently underwent a radical right nephrectomy.

10      66.     Plaintiff Cher Cendejas Pence is a citizen and resident of Maricopa, Arizona. From

11  approximately 1987 to 1994 Plaintiff Cher Cendejas Pence was regularly exposed to PFAS

12  through drinking water at residences in Visalia, California; Reno, Nevada; Fresno, California; and

13  Sparks, Nevada.

14      67.     On or about 2017, Plaintiff Cher Cendejas Pence was diagnosed with kidney cancer

15  in Phoenix, Arizona and subsequently underwent a partial left nephrectomy.

16      68.     Plaintiff Ruby Chavez is a citizen and resident of Placentia, California. From

17  approximately 1978 to 2025, Plaintiff Ruby Chavez was regularly exposed to PFAS through

18  drinking water at residences in Placentia, California; Anaheim, California; and Santa Ana,

19  California.

20      69.     On or about March 2019, Plaintiff Ruby Chavez was diagnosed with clear cell renal

21  carcinoma in Placentia, California and subsequently underwent a partial right nephrectomy.

22      70.     Plaintiff David Chavez is a citizen and resident of Riverside, California. From

23  approximately 2002 to 2025, Plaintiff David Chavez was regularly exposed to PFAS through

24  drinking water at residences in Anaheim, California; Fullerton, California; and Riverside,

25  California.

26      71.     On or about December 25, 2019, Plaintiff David Chavez was diagnosed with

27  testicular cancer in Anaheim, California and subsequently underwent a total right orchiectomy.

28      72.     Plaintiff Jerome Cheng is a citizen and resident of West Sacramento, California.

From approximately 1996 to 2025, Plaintiff Jerome Cheng was regularly exposed to PFAS through drinking water at residences and workplaces in Sacramento, California; Elk Grove, California; and West Sacramento, California.

73.     On or about 2023, Plaintiff Jerome Cheng was diagnosed with kidney cancer in Sacramento, California and subsequently underwent a partial right nephrectomy.

74.     Plaintiff Marilyn Cinollo is a citizen and resident of Oakland, California. From approximately 1987 to 2025, Plaintiff Marilyn Cinollo was regularly exposed to PFAS through drinking water at residences in Hayward, California; Oakland, California; Fremont, California; Castro Valley, California; and San Leandro, California.

75.     On or about March 2017, Plaintiff Marilyn Cinollo was diagnosed with clear cell renal carcinoma in San Leandro, California and subsequently underwent a partial left nephrectomy.

76.     Plaintiff Donald Clark is a citizen and resident of Santa Rosa, California. From approximately 1970 to 2025, Plaintiff Donald Clark was regularly exposed to PFAS through drinking water at residences and workplaces in Monterey, California; Hayward, California; San Jose, California; and Santa Rosa, California.

77.     On or about 2018, Plaintiff Donald Clark was diagnosed with kidney cancer in Santa Rosa, California and subsequently underwent a radical right nephrectomy. On or about 2020, Plaintiff Donald Clark was again diagnosed with kidney cancer in Santa Rosa, California and subsequently underwent a radical left nephrectomy.

78.     Plaintiff Matthew Coffey is a citizen and resident of San Diego, California. From approximately 1978 to 2025, Plaintiff Matthew Coffey was regularly exposed to PFAS through drinking water at residences in La Mesa, California and San Diego, California.

79.     On or about 2016, Plaintiff Matthew Coffey was diagnosed with testicular cancer in San Diego, California and subsequently underwent a total left orchiectomy and chemotherapy treatment.

80.     Plaintiff Jeffrey Cooley is a citizen and resident of Lexington, South Carolina. From approximately 1976 to 2025, Plaintiff Jeffrey Cooley was regularly exposed to PFAS

1    through drinking water at residences and workplaces in Artesia, California; Lakewood, California;

2    Bellflower, California; Garden Grove, California; Midway City, California; Los Angeles,

3    California; and Lexington, South Carolina.

4        81.    On or about 2012, Plaintiff Jeffrey Cooley was diagnosed with testicular cancer in

5    Los Angeles, California and subsequently underwent a total left orchiectomy and radiation

6    treatment.

7        82.    Plaintiff Robert Coolidge is a citizen and resident of Ventura, California. From

8    approximately 1988 to 2025, Plaintiff Robert Coolidge was regularly exposed to PFAS through

9    drinking water at residences in Long Beach, California; Oceanside, California; Carlsbad,

10   California; Thousand Oaks, California; and Ventura, California.

11       83.    On or about October 2018, Plaintiff Robert Coolidge was diagnosed with kidney

12   cancer in Duarte, California and subsequently underwent a radical right nephrectomy.

13       84.    Plaintiff Javier Corrochano is a citizen and resident of Redwood City, California.

14   From approximately 2015 to 2022, Plaintiff Javier Corrochano was regularly exposed to PFAS

15   through drinking water at residences in Coral Gables, Florida; Miami Beach, Florida; Santa Clara,

16   California; San Jose, California; Sunnyvale, California; and San Mateo, California.

17       85.    On or about October 2017, Plaintiff Javier Corrochano was diagnosed with

18   testicular cancer in Palo Alto, California and subsequently underwent a total left orchiectomy.

19       86.    Plaintiff Lisa Curl is a citizen and resident of Redding, California. From

20   approximately 1980 to 2025, Plaintiff Lisa Curl was regularly exposed to PFAS through drinking

21   water at residences in and workplaces in Fort Jackson, South Carolina; Joint Base San Antonio -

22   Fort Sam Houston, Texas; Fort Sill, Oklahoma; Los Angeles, California; and Redding, California.

23       87.    On or about March 2022, Plaintiff Lisa Curl was diagnosed with kidney cancer in

24   Redding, California and subsequently underwent a radical right nephrectomy.

25       88.    Plaintiff Stephen Dabasinskas is a citizen and resident of Camas, Washington.

26   From approximately 1988 to 2025, Plaintiff Stephen Dabasinskas was regularly exposed to PFAS

27   through drinking water at residences and workplaces in Camp Roberts, California; Fort Ord,

28   California; San Diego, California; Lake Forest, California; Beverly Hills, California; Newport

Beach, California; Mission Viejo, California; and Camas, Washington.

89.    On or about 2010, Plaintiff Stephen Dabasinskas was diagnosed with testicular cancer in Mission Viejo, California and subsequently underwent a total right orchiectomy and chemotherapy treatment.

90.    Plaintiff Michael David is a citizen and resident of Oceanside, California. From approximately 1972 to 2025, Plaintiff Michael David was regularly exposed to PFAS through drinking water at residences and workplaces in Marine Corps Mountain Warfare Training Center, California; Marine Corps Air Ground Combat Center - Twentynine Palms, California; Twentynine Palms, California; Granada Hills, California; Fallbrook, California; Oceanside, California; Romoland, California; and Vista, California.

91.    On or about August 2013, Plaintiff Michael David was diagnosed with kidney cancer in San Marcos, California and subsequently underwent a partial left nephrectomy.

92.    Plaintiff Craig Davis is a citizen and resident of Banning, California. From approximately 1981 to 2018, Plaintiff Craig Davis was regularly exposed to PFAS through drinking water at residences and workplaces in San Juan Capistrano, California; Mission Viejo, California; Lake Forest, California; and Rancho Mirage, California.

93.    On or about February 2025, Plaintiff Craig Davis was diagnosed with kidney cancer in Moreno Valley, California and subsequently underwent related treatment.

94.    Plaintiff Murray DeFord III is a citizen and resident of Apple Valley, California. From approximately 1991 to 2025, Plaintiff Murray DeFord III was regularly exposed to PFAS through drinking water at residences and workplaces in Fort Irwin, California and Placerville, California.

95.    On or about April 2022, Plaintiff Murray DeFord III was diagnosed with kidney cancer in Fort Irwin, California and subsequently underwent a radical right nephrectomy.

96.    Plaintiff Douglas Dockstader Jr. is a citizen and resident of San Diego, California. From approximately 1989 to 2025, Plaintiff Douglas Dockstader Jr. was regularly exposed to PFAS through drinking water at residences and workplaces in Great Lakes Naval Station, North Chicago, Illinois; Naval Training Center, Orlando, Florida; Naval Base, Coronado, California;

Imperial Beach, California; San Diego, California; Lakewood, Colorado; National City, California; and Ramona, California.

97.    On or about 2014, Plaintiff Douglas Dockstader Jr. was diagnosed with testicular cancer in San Diego, California and subsequently underwent a total left orchiectomy.

98.    Plaintiff Edward Doyle Jr. is a citizen and resident of Corona, California. From approximately 1978 to 2025, Plaintiff Edward Doyle Jr. was regularly exposed to PFAS through drinking water at residences and workplaces in Glendora, California; Temple City, California; Los Angeles, California; North Hills, California; and Corona, California.

99.    On or about March 2009, Plaintiff Edward Doyle Jr. was diagnosed with kidney cancer in Wildomar, California and subsequently underwent a partial left nephrectomy. On or about 2024, Plaintiff Edward Doyle Jr. was diagnosed with thyroid disease in Murrieta, California.

100.    Plaintiff Richard Dyer is a citizen and resident of Yorba Linda, California. From approximately 1970 to 2025, Plaintiff Richard Dyer was regularly exposed to PFAS through drinking water at residences and workplaces in Anaheim, California; Orange, California; and Yorba Linda, California.

101.    On or about 2018, Plaintiff Richard Dyer was diagnosed with kidney cancer in Anaheim, California and subsequently underwent a partial left nephrectomy.

102.    Plaintiff Donald Etheridge Jr. is a citizen and resident of Oceanside, California. From approximately 1982 to 2025, Plaintiff Donald Etheridge Jr. was regularly exposed to PFAS through drinking water at residences and workplaces in El Cajon, California; San Diego, California; Lemon Grove, California; Vista, California; and Oceanside, California.

103.    On or about 2005, Plaintiff Donald Etheridge Jr. was diagnosed with ulcerative colitis in San Marcos, California. On or about 2012, Plaintiff Donald Etheridge Jr. was diagnosed with testicular cancer in San Marcos, California and subsequently underwent a total right orchiectomy and chemotherapy treatment. On or about 2017, Plaintiff Donald Etheridge Jr. was diagnosed with kidney cancer in San Marcos, California and subsequently underwent a partial right nephrectomy.

104.    Plaintiff Shirley Fernandez is a citizen and resident of Colton, California. From

1    approximately 1967 to 2025, Plaintiff Shirley Fernandez was regularly exposed to PFAS through
2    drinking water at residences in Colton, California; Bloomington, California; and San Bernardino,
3    California.

4          105.    On or about October 2021, Plaintiff Shirley Fernandez was diagnosed with kidney
5    cancer in Loma Linda, California and subsequently underwent an ablation and radiation treatment.

6          106.    Plaintiff David Fontan is a citizen and resident of Pleasant Hill, California. From
7    approximately 1980 to 2025, Plaintiff David Fontan was regularly exposed to PFAS through
8    drinking water at residences and workplaces in Naval Base San Diego, California; Naval Station
9    Norfolk, Virginia; Pleasant Hill, California; Martinez, California; and Pacheco, California.

10         107.    On or about 2010, Plaintiff David Fontan was diagnosed with testicular cancer in
11   Walnut Creek, California and subsequently underwent a total left orchiectomy.

12         108.    Plaintiff Barbara Fortner is a citizen and resident of Yuma, Arizona. From
13   approximately 1971 to 2022, Plaintiff Barbara Fortner was regularly exposed to PFAS through
14   drinking water at residences and workplaces in Liberty Station, California and San Diego,
15   California.

16         109.    On or about 2000, Plaintiff Barbara Fortner was diagnosed with hyperthyroidism
17   in Yuma, Arizona. On or about November 2006, Plaintiff Barbara Fortner was diagnosed with
18   kidney cancer in San Diego, California and subsequently underwent a partial left nephrectomy.

19         110.    Plaintiff Carlos Guzman is a citizen and resident of Parker, Arizona. From
20   approximately 1969 to 2025, Plaintiff Carlos Guzman was regularly exposed to PFAS through
21   drinking water at residences and workplaces in Marine Corps Recruit Depot San Diego, California;
22   Naval Support Activity Mid-South, Tennessee; Naval Air Weapons Station China Lake,
23   California; Fort Leonard Wood, Kansas; Lomita, California; Harbor City, California; Wilmington,
24   California; Carson, California; San Pedro, California; and Riverside, California.

25         111.    On or about 2022, Plaintiff Carlos Guzman was diagnosed with kidney cancer in
26   Los Angeles, California and subsequently underwent a radical right nephrectomy.

27         112.    Plaintiff Diana Hecht is a citizen and resident of Claremont, California. From
28   approximately 1969 to 2025, Plaintiff Diana Hecht was regularly exposed to PFAS through

drinking water at residences in Claremont, California.

113.    On or about 2021, Plaintiff Diana Hecht was diagnosed with thyroid disease in Claremont, California. On or about January 2025, Plaintiff Diana Hecht was diagnosed with kidney cancer in Pomona, California and subsequently underwent a cryoablation.

114.    Plaintiff Edward Heins is a citizen and resident of Fountain Valley, California. From approximately 1986 to 2025, Plaintiff Edward Heins was regularly exposed to PFAS through drinking water at residences and workplaces in Joint Base San Antonio - Lackland Air Force Base, Texas; Keesler Air Force Base, Mississippi; Lowry Air Force Base, Colorado; Goodfellow Air Force Base, Texas; Placentia, California; Yorba Linda, California; Huntington Beach, California; and Fountain Valley, California.

115.    On or about 2019, Plaintiff Edward Heins was diagnosed with kidney cancer in Newport Beach, California and subsequently underwent a radical right nephrectomy.

116.    Plaintiff Thomas Hernandez is a citizen and resident of Rescue, California. From approximately 1988 to 2018, Plaintiff Thomas Hernandez was regularly exposed to PFAS through drinking water at residences and workplaces in Camp Pendleton North, California; Twentynine Palms, California; Casper, Wyoming; Fremont, California; and Hayward, California.

117.    On or about September 2023, Plaintiff Thomas Hernandez was diagnosed with clear cell renal carcinoma in Burlingame, California and subsequently underwent a partial left nephrectomy.

118.    Plaintiff Nicholas Hernandez is a citizen and resident of Chula Vista, California. From approximately 1969 to 2025, Plaintiff Nicholas Hernandez was regularly exposed to PFAS through drinking water at residences and workplaces in Naval Base San Diego, California; Naval Support Activity Mid-South, Tennessee; Naval Air Station North Island, California; Tucson, Arizona; Chula Vista, California; and San Diego, California.

119.    On or about April 2014, Plaintiff Nicholas Hernandez was diagnosed with kidney cancer in San Diego, California and subsequently underwent a radical left nephrectomy.

120.    Plaintiff Harry Hicks is a citizen and resident of San Diego, California. From approximately 1989 to 2025, Plaintiff Harry Hicks was regularly exposed to PFAS through

drinking water at residences and workplaces in Naval Amphibious Base Coronado, California; Great Lakes Naval Station, Illinois; Joint Base Pearl Harbor-Hickam, Hawaii; Naval Base San Diego, California; Long Beach Naval Complex, California; Seattle, Washington; Imperial Beach, California; San Diego, California; and El Cajon, California.

121.    On or about July 2018, Plaintiff Harry Hicks was diagnosed with kidney cancer in San Diego, California and subsequently underwent a radical left nephrectomy.

122.    Plaintiff Matthew Holbrook is a citizen and resident of Lancaster, California. From approximately 1982 to 2012, Plaintiff Matthew Holbrook was regularly exposed to PFAS through drinking water at residences and workplaces in Naval Base San Diego, California; Tacoma, Washington; San Leandro, California; Oakland, California; Piedmont, California; Morgan Hill, California; and Palmdale, California.

123.    On or about January 2025, Plaintiff Matthew Holbrook was diagnosed with kidney cancer in Los Angeles, California and subsequently underwent a partial right nephrectomy.

124.    Plaintiff Timothy Horning Jr. is a citizen and resident of Murrieta, California. From approximately 1985 to 2025, Plaintiff Timothy Horning Jr. was regularly exposed to PFAS through drinking water at residences and workplaces in Lackland Air Force Base, Texas; Lakeside, California; El Cajon, California; Redlands, California; and Murrieta, California.

125.    On or about June 2015, Plaintiff Timothy Horning Jr. was diagnosed with testicular cancer in San Diego, California and subsequently underwent a total right orchiectomy, chemotherapy, and immunotherapy treatment.

126.    Plaintiff David Jackel is a citizen and resident of Sherman Oaks, California. From approximately 1967 to 2024, Plaintiff David Jackel was regularly exposed to PFAS through drinking water at residences and workplaces in Brooklyn, New York; Marlboro Township, New Jersey; Los Angeles, California; and Sherman Oaks, California.

127.    On or about November 23, 2008, Plaintiff David Jackel was diagnosed with kidney cancer in Los Angeles, California and subsequently underwent a radical right nephrectomy and chemotherapy treatment.

128.    Plaintiff Michael James is a citizen and resident of Lathrop, California. From

approximately 1970 to 2025, Plaintiff Michael James was regularly exposed to PFAS through drinking water at residences in Oakland, California; San Leandro, California; Tracy, California; and Lathrop, California.

129.    On or about 2019, Plaintiff Michael James was diagnosed with kidney cancer in Manteca, California and subsequently underwent a radical right nephrectomy.

130.    Plaintiff Wesley Johnson is a citizen and resident of Whittier, California. From approximately 1989 to April 2025, Plaintiff Wesley Johnson was regularly exposed to PFAS through drinking water at residences in Lake Elsinore, California; Placentia, California; Chino, California; Whittier, California; La Habra, California; and Chino Hills, California.

131.    On or about 2014, Plaintiff Wesley Johnson was diagnosed with testicular cancer in Pomona, California and subsequently underwent a total left orchiectomy.

132.    Plaintiff Arthur Johnston IV is a citizen and resident of Peoria, Arizona. From approximately 1980 to 2018, Plaintiff Arthur Johnston IV was regularly exposed to PFAS through drinking water at residences in Lower Lake, California; Redlands, California; Murray, Utah; Vancouver, Washington; Salt Lake City, Utah; Bakersfield, California; and Peoria, Arizona.

133.    On or about 2016, Plaintiff Arthur Johnston IV was diagnosed with clear cell renal carcinoma in Glendale, Arizona and subsequently underwent a radical left nephrectomy.

134.    Plaintiff Corey Jones is a citizen and resident of Fort Mohave, Arizona. From approximately 1994 to 2013, Plaintiff Corey Jones was regularly exposed to PFAS through drinking water at residences, schools, and workplaces in Fort Hood, Texas; Fort Bragg, North Carolina; Fort Huachuca, Arizona; Fort Benning, Georgia; Fort Leonard Wood, Missouri; Redstone Arsenal, Alabama; Eglin Air Force Base, Florida; Fort Gordon, Georgia; Highland, California; Redlands, California; Hope Mills, North Carolina; Fayetteville, North Carolina; and Harker Heights, Texas.

135.    On or about March 2011, Plaintiff Corey Jones was diagnosed with testicular cancer in Landstuhl, Germany and subsequently underwent a total right orchiectomy and radiation treatment.

136.    Plaintiff Eric Kabel is a citizen and resident of Yuma, Arizona. From approximately

1982 to 2010, Plaintiff Eric Kabel was regularly exposed to PFAS through drinking water at residences and workplaces in Fort Jackson, South Carolina; Fort Gordon, Georgia; Portage, Michigan; Kalamazoo, Michigan; San Bernardino, California; San Dimas, California; Covina, California; and Fontana, California.

137.    On or about 2017, Plaintiff Eric Kabel was diagnosed with testicular cancer in Gilbert, Arizona and subsequently underwent a total right orchiectomy. On or about 2019, Plaintiff Eric Kabel was again diagnosed with testicular cancer in Phoenix, Arizona and subsequently underwent a total left orchiectomy and radiation treatment.

138.    Plaintiff Kevin Kahn is a citizen and resident of Los Angeles, California. From approximately 1975 to 2012, Plaintiff Kevin Kahn was regularly exposed to PFAS through drinking water at residences in Tallahassee, Florida; High Point, North Carolina; and Santa Monica, California.

139.    On or about 2017, Plaintiff Kevin Kahn was diagnosed with testicular cancer in Burbank, California and subsequently underwent related treatment.

140.    Plaintiff Jimmy Kelley is a citizen and resident of Yuma, Arizona. From approximately 1970 to 2019, Plaintiff Jimmy Kelley was regularly exposed to PFAS through drinking water at residences and workplaces in Modesto, California; Fife, Washington; Auburn, Washington; and Turlock, California.

141.    On or about September 2023, Plaintiff Jimmy Kelley was diagnosed with kidney cancer in Yuma, Arizona and subsequently underwent a radical right nephrectomy and immunotherapy treatment.

142.    Plaintiff Eric Kops is a citizen and resident of West Hollywood, California. From approximately 1975 to 2025, Plaintiff Eric Kops was regularly exposed to PFAS through drinking water at residences in San Diego, California; West Hollywood, California; and Los Angeles, California.

143.    On or about 2019, Plaintiff Eric Kops was diagnosed with kidney cancer in Los Angeles, California and subsequently underwent a radical right nephrectomy. On or about 2021, Plaintiff Eric Kops was again diagnosed with kidney cancer in Los Angeles, California and

subsequently underwent a partial left nephrectomy, adrenalectomy, chemotherapy, and immunotherapy treatment.

144.    Plaintiff Robert Lamb is a citizen and resident of Clarksville, Indiana. From approximately 1970 to 2020, Plaintiff Robert Lamb was regularly exposed to PFAS through drinking water at residences and workplaces in Mather Air Force Base, California; Rancho Cordova, California; Modesto, California; and Carmel, California.

145.    On or about 2016, Plaintiff Robert Lamb was diagnosed with kidney cancer in Palo Alto, California and subsequently underwent a partial left nephrectomy.

146.    Plaintiff Elisa Laster is a citizen and resident of Boiling Springs, South Carolina. From approximately 1970 to 2022, Plaintiff Elisa Laster was regularly exposed to PFAS through drinking water at residences and workplaces in Anaheim, California; Stanton, California; Mission Viejo, California; Riverside, California; Mira Loma, California; Cerritos, California; Whittier, California; and Eagle, Idaho.

147.    On or about 1984, Plaintiff Elisa Laster was diagnosed with thyroid disease in Loma Linda, California. On or about 2022, Plaintiff Elisa Laster was diagnosed with kidney cancer in Boise, Idaho and subsequently underwent a radical right nephrectomy.

148.    Plaintiff Curtis Leedy is a citizen and resident of Sacramento, California. From approximately 1980 to 2025, Plaintiff Curtis Leedy was regularly exposed to PFAS through drinking water at residences in Sacramento, California; Citrus Heights, California; and Carmichael, California.

149.    On or about 2014, Plaintiff Curtis Leedy was diagnosed with clear cell renal carcinoma in Roseville, California and subsequently underwent a radical right nephrectomy. On or about 2018, Plaintiff Curtis Leedy was again diagnosed with clear cell renal carcinoma in Roseville, California and subsequently underwent an adrenalectomy, immunotherapy, and radiation treatment.

150.    Plaintiff Samuel Leiva Jr. is a citizen and resident of Sherwood, Arkansas. From approximately 2000 to 2021, Plaintiff Samuel Leiva Jr. was regularly exposed to PFAS through drinking water at residences in Bakersfield, California.

151.    On or about June 14, 2022, Plaintiff Samuel Leiva Jr. was diagnosed with kidney cancer in Bakersfield, California and subsequently underwent an ablation. On or about 2024, Plaintiff Samuel Leiva Jr. was again diagnosed with kidney cancer in Little Rock, Arkansas and subsequently underwent an immunotherapy treatment.

152.    Plaintiff Salvador Lopez is a citizen and resident of Corpus Christi, Texas. From approximately 2007 to 2025, Plaintiff Salvador Lopez was regularly exposed to PFAS through drinking water at residences in Manteca, California and Corpus Christi, Texas.

153.    On or about 2010, Plaintiff Salvador Lopez was diagnosed with testicular cancer in Oakland, California and subsequently underwent a total right orchiectomy, chemotherapy, and radiation treatment.

154.    Plaintiff Alan Miller is a citizen and resident of Mountain View, California. From approximately 1977 to 2024, Plaintiff Alan Miller was regularly exposed to PFAS through drinking water at residences in Phoenix, Arizona; Prescott Valley, Arizona; Atwater, California; Glendale, Arizona; Las Cruces, New Mexico; Tucson, Arizona; and Mesa, Arizona.

155.    On or about 2018, Plaintiff Alan Miller was diagnosed with kidney cancer in Glendale, Arizona and subsequently underwent a partial left nephrectomy.

156.    Plaintiff Gary Million is a citizen and resident of Mission Viejo, California. From approximately 1977 to 2020, Plaintiff Gary Million was regularly exposed to PFAS through drinking water at residences and workplaces in Mission Viejo, California and Irvine, California.

157.    On or about 2018, Plaintiff Gary Million was diagnosed with thyroid disease in Anaheim, California.  On or about August 2, 2019, Plaintiff Gary Million was diagnosed with clear cell renal carcinoma in Orange, California and subsequently underwent a partial left nephrectomy. On or about November 2019, Plaintiff Gary Million was again diagnosed with kidney cancer in Orange, California and subsequently underwent a partial right nephrectomy.

158.    Plaintiff Alireza Mortazavi is a citizen and resident of Orange, California. From approximately 1985 to 2025, Plaintiff Alireza Mortazavi was regularly exposed to PFAS through drinking water at residences and workplaces in Los Angeles, California; Long Beach, California; Orange, California; and Irvine, California.

159.    On or about November 28, 2024, Plaintiff Alireza Mortazavi was diagnosed with kidney cancer in Orange, California and subsequently underwent a partial left nephrectomy.

160.    Plaintiff Christina Olin is a citizen and resident of Kingman, Arizona. From approximately 1974 to 2020, Plaintiff Christina Olin was regularly exposed to PFAS through drinking water at residences, schools, and workplaces in Fullerton, California; Irvine, California; Anaheim, California; Clovis, California; Oakhurst, California; and New Orleans, Louisiana.

161.    On or about 2010, Plaintiff Christina Olin was diagnosed with thyroid disease in Santa Maria, California. On or about February 2023, Plaintiff Christina Olin was diagnosed with kidney cancer in Flagstaff, Arizona and subsequently underwent related treatment.

162.    Plaintiff Thomas Pen is a citizen and resident of Ferndale, Washington. From approximately 2005 to 2025, Plaintiff Thomas Pen was regularly exposed to PFAS through drinking water at residences in Palm Springs, California and Ferndale, Washington.

163.    On or about November 2022, Plaintiff Thomas Pen was diagnosed with kidney cancer in Bellingham, Washington and subsequently underwent a partial bilateral nephrectomy.

164.    Plaintiff Brian Phillips is a citizen and resident of Chula Vista, California. From approximately 1978 to 2025, Plaintiff Brian Phillips was regularly exposed to PFAS through drinking water at residences in Chula Vista, California and La Mesa, California.

165.    On or about 2011, Plaintiff Brian Phillips was diagnosed with clear cell renal carcinoma in Chula Vista, California and subsequently underwent a partial left nephrectomy.

166.    Plaintiff Michael Prete is a citizen and resident of Watsonville, California. From approximately 1979 to 2025, Plaintiff Michael Prete was regularly exposed to PFAS through drinking water at residences in Los Angeles, California; Santa Cruz, California; Soquel, California; Ben Lomond, California; Capitola, California; and Watsonville, California.

167.    On or about 2006, Plaintiff Michael Prete was diagnosed with testicular cancer in Santa Cruz, California and subsequently underwent a total left orchiectomy and radiation treatment.

168.    Plaintiff Arturo Ramirez is a citizen and resident of Salinas, California. From approximately 1999 to 2010, Plaintiff Arturo Ramirez was regularly exposed to PFAS through

1    drinking water at workplaces in Salinas, California.

2         169.    On or about 2012, Plaintiff Arturo Ramirez was diagnosed with testicular cancer in

3    Salinas, California and subsequently underwent a total left orchiectomy and chemotherapy

4    treatment.

5         170.    Plaintiff Jose Ramirez-Serna is a citizen and resident of Alta Loma, California.

6    From approximately 1968 to 2025, Plaintiff Jose Ramirez-Serna was regularly exposed to PFAS

7    through drinking water at residences and workplaces in Amarillo Air Force Base, Texas; Los

8    Angeles, California; Alta Loma, California; and Alhambra, California.

9         171.    On or about 2005, Plaintiff Jose Ramirez-Serna was diagnosed with kidney cancer

10   in Loma Linda, California and subsequently underwent a partial right nephrectomy.

11        172.    Plaintiff Brandon Redd is a citizen and resident of Cudahy, California. From

12   approximately 1990 to 2025, Plaintiff Brandon Redd was regularly exposed to PFAS through

13   drinking water at residences, schools, and workplaces in Los Angeles, California; Hawthorne,

14   California; and Cudahy, California.

15        173.    On or about February 2007, Plaintiff Brandon Redd was diagnosed with testicular

16   cancer in Los Angeles, California and subsequently underwent a total right orchiectomy and

17   chemotherapy treatment.

18        174.    Plaintiff Hector Reyes is a citizen and resident of Arleta, California. From

19   approximately 1984 to 2025, Plaintiff Hector Reyes was regularly exposed to PFAS through

20   drinking water at residences, schools, and workplaces in Mission Hills, California; Van Nuys,

21   California; Los Angeles, California; Arleta, California; and Palmdale, California.

22        175.    On or about 2013, Plaintiff Hector Reyes was diagnosed with kidney cancer in Los

23   Angeles, California and subsequently underwent a radical left nephrectomy.

24        176.    Plaintiff Johnnie Rico is a citizen and resident of La Habra, California. From

25   approximately 1970 to 2025, Plaintiff Johnnie Rico was regularly exposed to PFAS through

26   drinking water at residences in La Mirada, California; Whittier, California; Norwalk, California;

27   and La Habra, California.

28        177.    On or about 2022, Plaintiff Johnnie Rico was diagnosed with kidney cancer in

1    Fullerton, California and subsequently underwent a radical right nephrectomy.

2        178.    Plaintiff Robert Rodriguez is a citizen and resident of Hacienda Heights, California.

3    From approximately 1970 to 2025, Plaintiff Robert Rodriguez was regularly exposed to PFAS

4    through drinking water at residences and workplaces in Edwards Air Force Base, California; Fort

5    Irwin, California; Hacienda Heights, California; and La Puente, California.

6        179.    On or about 2015, Plaintiff Robert Rodriguez was diagnosed with testicular cancer

7    in Baldwin Park, California and subsequently underwent a total left orchiectomy.

8        180.    Plaintiff Lionel Rodriguez is a citizen and resident of Selma, California. From

9    approximately 2007 to 2020, Plaintiff Lionel Rodriguez was regularly exposed to PFAS through

10   drinking water at residences and workplaces in Fresno, California.

11       181.    On or about June 2018, Plaintiff Lionel Rodriguez was diagnosed with testicular

12   cancer in Selma, California and subsequently underwent a total right orchiectomy.

13       182.    Plaintiff Monica Rogers-Kelly is a citizen and resident of Taft, California. From

14   approximately 2016 to 2017, Plaintiff Monica Rogers-Kelly was regularly exposed to PFAS

15   through drinking water at her school in Bakersfield, California.

16       183.    On or about November 2019, Plaintiff Monica Rogers-Kelly was diagnosed with

17   kidney cancer in Bakersfield, California and subsequently underwent a radical left nephrectomy.

18       184.    Plaintiff Mario Rojas Jr. is a citizen and resident of Bakersfield, California. From

19   approximately 1974 to 2025, Plaintiff Mario Rojas Jr. was regularly exposed to PFAS through

20   drinking water at residences and workplaces in Bakersfield, California.

21       185.    On or about 2011, Plaintiff Mario Rojas Jr. was diagnosed with testicular cancer in

22   Bakersfield, California and subsequently underwent a total right orchiectomy.

23       186.    Plaintiff Tyler Ruiz is a citizen and resident of Brawley, California. From

24   approximately 1999 to 2003, Plaintiff Tyler Ruiz was regularly exposed to PFAS through drinking

25   water at residences, schools, and workplaces in San Diego, California.

26       187.    On or about January 2022, Plaintiff Tyler Ruiz was diagnosed with testicular cancer

27   in El Centro, California and subsequently underwent a total right orchiectomy and radiation

28   treatment.

188.    Plaintiff Ray Sanchez is a citizen and resident of Parlier, California. From approximately 1980 to 1997, Plaintiff Ray Sanchez was regularly exposed to PFAS through drinking water at residences and workplaces in Fort Leonard Wood, Missouri; Fort Lewis, Washington; and Fresno, California.

189.    On or about 2008, Plaintiff Ray Sanchez was diagnosed with clear cell renal carcinoma in Fresno, California and subsequently underwent a partial nephrectomy. On or about 2016, Plaintiff Ray Sanchez was again diagnosed with clear cell renal carcinoma in Palo Alto, California and subsequently underwent a partial left nephrectomy.

190.    Plaintiff John Shepard is a citizen and resident of San Francisco, California. From approximately 1996 to 2003, Plaintiff John Shepard was regularly exposed to PFAS through drinking water at residences in Fallbrook, California and Oceanside, California.

191.    On or about 2019, Plaintiff John Shepard was diagnosed with clear cell renal carcinoma in San Francisco, California and subsequently underwent a partial nephrectomy.

192.    Plaintiff Jacob Tenczar is a citizen and resident of Denver, Colorado. From approximately 2000 to February 2025, Plaintiff Jacob Tenczar was regularly exposed to PFAS through drinking water at residences and workplaces in San Jose, California; Sunnyvale, California; and Denver, Colorado.

193.    On or about June 2018, Plaintiff Jacob Tenczar was diagnosed with testicular cancer in Santa Clara, California. On or about November 2018, Plaintiff Jacob Tenczar was again diagnosed with testicular cancer in Santa Clara, California. Subsequently, Plaintiff Jacob Tenczar underwent chemotherapy, immunotherapy, and surgical tumor removal.

**B.    Defendants**

194.    Upon information and belief, the following Defendants designed, manufactured, formulated, marketed, promoted, distributed, and/or sold the Fluorosurfactant Products to which Plaintiffs were exposed.

195.    **3M:** Defendant 3M Company (f/k/a Minnesota Mining and Manufacturing Company) ("3M") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 3M Center, St. Paul, Minnesota 55144. At all times

relevant, 3M manufactured, marketed, promoted, distributed, and/or sold AFFF containing PFOA and/or PFOS used to fight fires at numerous military bases, airports, and other locations throughout the country.

196.    3M is the only company that manufactured and/or sold AFFF containing PFOS.

197.    **AGC AMERICA:** Defendant AGC Chemicals Americas, Inc. ("AGC America") is a Delaware corporation with its principal business office at 55 E. Uwchlan Avenue, Suite 201, Exton, Pennsylvania 19341. Upon information and belief, AGC America is a subsidiary of AGC, Inc., a Japanese corporation formerly known as Asahi Glass Company, Ltd.

198.    **AGC:** Defendant AGC, Inc. f/k/a Asahi Glass Co., Ltd. ("AGC"), is a corporation organized under the laws of Japan and does business throughout the United States. AGC has its principal place of business at 1-5-1, Marunouchi, Chiyoda-ku, Tokyo 100-8405 Japan.

199.    **ARCHROMA US:** Defendant Archroma U.S., Inc. ("Archroma US") is a Delaware corporation with its principal place of business located at 5435 77 Center Dr., #10, Charlotte, North Carolina 28217. Upon information and belief, Archroma U.S., Inc. is a subsidiary of Archroma Management, LLC, and supplied Fluorosurfactant Products for use in AFFF.

200.    **ARKEMA:** Defendant Arkema, Inc. is a corporation organized and existing under the laws of the State of Pennsylvania, with its principal place of business at 900 1st Avenue, King of Prussia, Pennsylvania 19406. Arkema, Inc. is an operating subsidiary of Arkema France, S.A.

201.    **BASF:** Defendant BASF Corporation ("BASF") is a Delaware corporation with its principal place of business at 100 Park Avenue, Florham Park, New Jersey 07932. Upon information and belief, BASF acquired Ciba-Geigy Corporation and/or Ciba Specialty Chemicals.

202.    **BUCKEYE:** Defendant Buckeye Fire Equipment Company ("Buckeye") is a foreign corporation organized and existing under the laws of the State of Ohio, with its principal place of business at 110 Kings Road, Mountain, North Carolina 28086. This Defendant manufactured and sold AFFF that contained PFOA.

203.    **CHEMDESIGN:** Defendant ChemDesign Products, Inc. ("ChemDesign") is a Texas corporation with its principal place of business located at 2 Stanton Street, Marinette, Wisconsin 54143.

204.     **CHEMGUARD:** Defendant Chemguard, Inc. ("Chemguard") is a corporation organized and existing under the laws of the State of Wisconsin, with its principal place of business located at One Stanton Street, Marinette, Wisconsin 54143. This Defendant manufactured and sold AFFF that contained PFOA.

205.     **CLARIANT:** Defendant Clariant Corporation ("Clariant") is a New York corporation with its principal place of business located at 4000 Monroe Road, Charlotte, North Carolina 28205.

206.     **CORTEVA:** Defendant Corteva, Inc. ("Corteva") is a Delaware corporation with its principal place of business located at 974 Centre Road, Wilmington, Delaware 19805.

207.     **DUPONT DE NEMOURS:** Defendant DuPont De Nemours, Inc. (f/k/a DowDuPont, Inc.) is a Delaware corporation with its principal place of business located at 974 Centre Road, Building 730, Wilmington, Delaware 19805. DowDuPont, Inc. was formed in 2017 as a result of the merger of Dow Chemical and DuPont.

208.     Upon information and belief, Corteva was originally formed in February 2018 as a wholly-owned subsidiary of DowDuPont, Inc. On June 1, 2019, DowDuPont, Inc. separated its agriculture business through the spin-off of Corteva. In doing so, DowDuPont, Inc. distributed all issued and outstanding shares of Corteva common stock to DowDuPont, Inc. stockholders by way of a pro-rata dividend. Upon information and belief, following that distribution, Corteva became the direct parent of DuPont, and holds certain DowDuPont, Inc. assets and liabilities.

209.     Following the June 1, 2019 spin-off of Corteva and of another entity, Dow, Inc., DowDuPont, Inc. changed its name to DuPont De Nemours, Inc. ("New DuPont"). Upon information and belief, New DuPont retained assets in the specialty products business lines, as well as the balance of the financial assets and liabilities of DuPont not assumed by Corteva.

210.     **DYNAX:** Defendant Dynax Corporation ("Dynax") is a Delaware corporation with its principal place of business located at 103 Fairview Park Drive, Elmsford, New York 10523. Upon information and belief, this Defendant manufactured Fluorosurfactant Products for use in AFFF.

211.     **DUPONT:** Defendant E.I. Du Pont De Nemours and Company ("DuPont") is a

1    corporation organized and existing under the laws of the State of Delaware with its principal place

2    of business located at 974 Centre Road, Wilmington, Delaware 19805.

3        212.    **CHEMOURS:** Defendant The Chemours Company ("Chemours") is a corporation

4    organized and existing under the laws of the State of Delaware, with its principal place of business

5    located at 1007 Market Street, Wilmington, Delaware 19899.

6        213.    In 2015, DuPont spun off its "Performance Chemicals" business to Chemours,

7    along with certain environmental liabilities. Upon information and belief, at the time of the transfer

8    of its Performance Chemicals business to Chemours, DuPont had been sued, threatened with suit

9    and/or had knowledge of the likelihood of litigation to be filed regarding DuPont's liability for

10    damages and injuries arising from the manufacture and sale of PFAS compounds and products that

11    contain PFAS compounds.

12        214.    **CHEMOURS FC:** Defendant The Chemours Company FC, LLC ("Chemours

13    FC"), successor in interest to DuPont Chemical Solutions Enterprise, is a Delaware limited liability

14    company that conducts business throughout the United States. Its principal place of business is

15    1007 Market Street Wilmington, Delaware, 19899.

16        215.    **TYCO:** Defendant Tyco Fire Products L.P. ("Tyco") is a limited partnership

17    organized and existing under the laws of the State of Delaware with its principal place of business

18    located at 1400 Pennbrook Parkway, Lansdale, Pennsylvania 19446.

19        216.    Tyco is an indirect subsidiary that is wholly owned by Johnson Controls

20    International P.L.C., an Irish public limited company listed on the New York Stock Exchange

21        217.    Tyco manufactures the Ansul brand of products and is the successor-in-interest to

22    the corporation formerly known as The Ansul Company ("Ansul") (hereinafter, Ansul and/or Tyco

23    as the successor-in-interest to Ansul will be referred to collectively as "Tyco"). At all times

24    relevant, Tyco manufactured, marketed, promoted, distributed, and/or sold fire suppression

25    products, including AFFF that contained fluorocarbon surfactants containing PFAS.

26        218.    Upon information and belief, Defendant John Does 1-49 were manufacturers

27    and/or sellers of AFFF products. Although the identities of the John Doe Defendants are currently

28    unknown, it is expected that their names will be ascertained during discovery, at which time the

1    Plaintiffs will move for leave of this Court to add those individuals' actual names to the Complaint

2    as Defendants.

3         219.    All of the foregoing Defendants, upon information and belief, have previously

4    conducted and/or currently conduct their business throughout the United States. Moreover, some

5    of the foregoing Defendants, if not all, have conducted and/or are currently conducting business

6    in the State of California.

7         220.    Any and all references to a Defendant or Defendants in this Complaint include any

8    predecessors, successors, parents, subsidiaries, affiliates and divisions of the named Defendants.

9         221.    The term "Defendants," without naming any specific one, refers to all Defendants

10   named in this Complaint jointly and severally. When reference is made to any act or omission of

11   the Defendants, it shall be deemed to mean that the officers, directors, agents, employees, or

12   representatives of the Defendants committed or authorized such act or omission, or failed to

13   adequately supervise or properly control or direct their employees while engaged in the

14   management, direction, operation or control of the affairs of Defendants, and did so while acting

15   within the scope of their employment or agency.

16                        **III.    JURISDICTION & VENUE**

17        222.    This Court has jurisdiction pursuant to Cal. Const. art. VI, § 10.

18        223.    This Court may exercise personal jurisdiction over Defendants because, based on

19   information and belief, each is a corporation or other business that has sufficient minimum contacts

20   in California, or otherwise intentionally avails itself of the California market either through the

21   distribution or sale of products containing PFAS in the State of California or by having a

22   manufacturing, distribution or other facility located in California so as to render the exercise of

23   jurisdiction over it by the California courts consistent with traditional notions of fair play and

24   substantial justice.

25        224.    Venue is appropriate in this county pursuant to Cal. Code Civ. Proc. §395 as facts

26   giving rise to the Plaintiffs' injuries occurred in this County.

27                        **IV.    FACTUAL ALLEGATIONS**

28        A.    **The PFAS Contaminants at Issue: PFOA and PFOS**

225.    Both PFOA and PFOS fall within a class of chemical compounds known as perfluoroalkyl acids ("PFAAs"). PFAAs are then part of a larger chemical family recognized as per- and polyfluoroalkyl substances ("PFAS"). PFAA is composed of a chain of carbon atoms in which all but one of the carbon atoms are bonded to fluorine atoms, meanwhile the last carbon atom is attached to a functional group. The carbon-fluorine bond is one of the strongest chemical bonds that occur in nature.

226.    PFAAs are sometimes described as long-chain and short-chain compounds, depending on the number of carbon atoms contained in the carbon chain. PFOA and PFOS are considered long-chain PFAAs because they each have eight carbon atoms in their chains.

227.    PFOA and PFOS are stable, man-made chemicals. They are highly water soluble, persistent in the environment and resistant to biologic, environmental, or photochemical degradation. Because these compounds are water soluble and do not readily adsorb to sediments or soil, they tend to stay in the water column and can be transported long distances.

228.    Both PFOA and PFOS are readily absorbed in animal and human tissues after oral exposure and accumulate in the serum, kidney, and liver. They have been found globally in water, soil and air as well as in human food supplies, breast milk, umbilical cord blood, and human blood serum.[1]

229.    Moreover, PFOA and PFOS are persistent in the human body and resistant to metabolic degradation. A short-term exposure can result in a body burden that persists for years and can increase with additional exposures.[2]

230.    Notably, from the time these two compounds were first produced, information has emerged showing negative health effects caused by exposure to PFOA and PFOS. According to

---

[1] EPA, *Health Effects Support Document for Perfluorooctane Sulfonate (PFOS),* Document No. EPA 822-R-16-002 (May 2016), available at https://www.epa.gov/sites/default/files/2016-05/documents/pfos_hesd_final_508.pdf (last accessed March 11, 2025);  EPA, *Health Effects Support Document for Perfluorooctanoic Acid (PFOA)*, available at https://www.epa.gov/sites/default/files/2016-05/documents/pfoa_hesd_final-plain.pdf (last accessed March 11, 2025).

[2] *See* notes 1, 2, *supra.  See also* EPA, Technical *Fact Sheet – Perfluorooctane Sulfonate (PFOS) and Perfluorooctanoic Acid (PFOA),* available at  https://www.regulations.gov/document/EPA-HQ-TRI-2022-0270-0009 (last accessed March 11, 2025).

EPA, PFOA and PFOS are associated with high cholesterol, thyroid disorders, pregnancy-induced hypertension, preeclampsia, reproductive, developmental, and systemic effects, and cancers.[3]

231.    The EPA has warned that there is suggestive evidence of the carcinogenic potential for PFOA and PFOS in humans.[4]

232.    The EPA continues to research the effects of PFAS.  In June 2022, after evaluating over 400 studies published since 2016 and applying human health risk assessment approaches, tools, and models EPA concluded that the new data indicates that the levels of PFOA and/or PFOS exposure at which negative outcomes could occur are much lower than previously understood when the agency issued its 2016 HAs for PFOA and PFOS (70 parts per trillion or ppt).  EPA therefore announced new Interim Updated Health Advisory levels for PFOA of 0.004 ppt and 0.02 ppt for PFOS.[5]

233.    In April, 2024, EPA established legally enforceable levels, called Maximum Contaminant Levels (MCLs), for six PFAS in drinking water: PFOA, PFOS, PFHxS, PFNA, and HFPO-DA as contaminants with individual MCLs, and PFAS mixtures containing at least two or more of PFHxS, PFNA, HFPO-DA, and PFBS using a Hazard Index MCL to account for the combined and co-occurring levels of these PFAS in drinking water. EPA also finalized health-based, non-enforceable Maximum Contaminant Level Goals (MCLGs) for these PFAS.  The MCLs for PFOA and PFOS are each 4 parts per trillion ("ppt").[6]

B. **Aqueous Film-Forming Foam (AFFF) Contained PFOS and/or PFOA at Relevant Times**

234.    Aqueous Film-Forming Foam ("AFFF") is a water-based foam that was first developed in the 1960s to extinguish flammable liquid fuel fires at airports, among other places.

---

[3] *Id.*

[4] *See* EPA, *Health Effects Support Document for Perfluorooctane Sulfonate (PFOS)*, Document Number: 822 R-16-002, available at https://www.epa.gov/sites/default/files/2016-05/documents/pfos_hesd_final_508.pdf (last accessed March 11, 2025).

[5] EPA, *Technical Fact Sheet: Drinking Water Health Advisories for Four PFAS (PFOA, PFOS, GenX chemicals, and PFBS)*, Document Number 822-F-22-002, available at https://nepis.epa.gov/Exe/ZyPURL.cgi?Dockey=P10154ST.txt (last accessed March 11, 2025).

[6] EPA, Per- and *Polyfluoroalkyl Substances (PFAS), Final PFAS National Primary Drinking Water Regulation*, available at https://www.epa.gov/sdwa/and-polyfluoroalkyl-substances-pfas (last accessed March 11 2025).

235. Generally, AFFF is used to extinguish fires, particularly fires that involve petroleum or other flammable liquids. AFFF is typically sprayed directly onto a fire, where it then works by coating the ignited fuel source, preventing its contact with oxygen, and suppressing combustion.

236. The AFFF products made by Defendants during the relevant time period contained either or both PFOA and PFOS. AFFF produced, marketed, and/or sold by 3M was the only AFFF produced from fluorochemicals manufactured through electrochemical fluorination ("ECF"), a process that generates PFOS. All other Defendants used telomerization to produce AFFF. Fluorochemicals synthesized through telomerization degrade into PFOA, but not PFOS.

237. When used as the Defendants intended and directed, AFFF causes PFOA, PFOS, and/or other PFAS compounds to enter the body of those handling, using, or otherwise exposed to the foam (including firefighters). When using AFFF, firefighters may absorb PFOA and PFOS through their skin, inhale PFOA and PFOS compounds, or inadvertently ingest PFOA and PFOS compounds. Additionally, when used as the Defendants intended and directed, AFFF causes PFOA and PFOS to seep into groundwater, and thus, drinking water supplies in the areas in which it is used. Once in the water supply, PFOA and PFOS can travel long distances from where the AFFF was used. This has resulted in widespread contamination of drinking water supplies with PFOA and PFOS nationwide.

238. Notably, AFFF can be made without PFOA and PFOS. Unlike AFFF made with PFOA or PFOS, fluorine-free foams do not pose a significant health risk to individuals.

239. Despite having knowledge of this fact—as well as having knowledge regarding the toxic nature of AFFF made with PFOA and/or PFOS—Defendants continued to manufacture, distribute and/or sell AFFF with PFOA and/or PFOS, which has ultimately led to Plaintiffs' injuries.

C. **Defendants' Knowledge of PFOA and PFOS Hazards**

240. On information and belief, by the 1970s, Defendants knew, or reasonably should have known, among other things, that: (1) PFOA and PFOS are toxic; and (2) when AFFF is used per the instructions given by the manufacturer, PFOA and PFOS migrate through the subsurface,

1    mix easily with groundwater, resist natural degradation, render drinking water unsafe and/or non-
2    potable, and can be removed from public drinking water supplies only at substantial expense.

3    241.    At all times pertinent herein, Defendants also knew or should have known that
4    PFOA and PFOS present a risk to human health and could be absorbed into the lungs and
5    gastrointestinal tract, potentially causing severe damage to the liver, kidneys, and central nervous
6    system, in addition to other toxic effects, and that PFOA and PFOS are known carcinogens that
7    cause genetic damage.

8    242.    For instance, in 1980, 3M published data in peer reviewed literature showing that
9    humans retain PFOA in their bodies for years. Based on that data, 3M estimated that it could take
10   a person up to 1.5 years to clear just half of the accumulated PFOA from their body after all
11   exposures had ceased.[7]

12   243.    By the early 1980s, the industry suspected a correlation between PFOA exposure
13   and human health effects. Specifically, manufacturers observed bioaccumulation of PFOA in
14   workers' bodies and birth defects in children of workers.

15   244.    In 1981, DuPont tested for and found PFOA in the blood of female plant workers
16   in Parkersburg, West Virginia. DuPont observed and documented pregnancy outcomes in exposed
17   workers, finding two of seven children born to female plant workers between 1979 and 1981 had
18   birth defects—one an "unconfirmed" eye and tear duct defect, and one a nostril and eye defect.[8]

19   245.    Beginning in 1983, 3M documented a trend of increasing levels of PFOA in the
20   bodies of 3M workers. In an internal memo, 3M's medical officer warned: "[W]e must view this
21   present trend with serious concern. It is certainly possible that [...] exposure opportunities are
22   providing a potential uptake of fluorochemicals that exceeds excretion capabilities of the body."[9]

23

24   [7] See Ubel, F.A., Sorenson, S.D., and Roach, D.E., *Health status of plant workers exposed to fluorochemicals - a preliminary report.* Journal Am. Ind Hyg. Assoc. J 41:584-89 (1980).

25

26   [8] See DuPont, *C-8 Blood Sampling Results,* available at
     https://static.ewg.org/files/PFOA_013.pdf?_gl=1*anldwl*_ga*NTgxNzgzMTc3LjE2ODI2ODk5ODk.*_ga_CS21G
27   C49KT*MTY4MzU4Nzg2OC4yLjEuMTY4MzU4Nzk0MC4wLjAuMA..&_ga=2.26293428.885409355.16835878
     69-581783177.1682689989 (last accessed March 11, 2025).

28   [9] See 3M, Internal Memorandum, *Organic Fluorine Levels,* (August 31, 1984), Office of Minnesota Attorney
     General, Exhibit List, No. 1313, available at https://www.ag.state.mn.us/Office/Cases/3M/StatesExhibits.asp (last

246.    Based on information and belief, in 2000, under pressure from the EPA, 3M announced that it was phasing out PFOS and U.S. production of PFOS; 3M's PFOS-based AFFF production did not fully phase out until 2002.   The company stopped producing PFOA at approximately the same time.

247.    From 1951, DuPont, and on information and belief, Chemours, designed, manufactured, marketed and sold Fluorosurfactant Products, including Teflon nonstick cookware, and more recently PFAS feedstocks such as Forafac 1157 N, for use in the manufacturing of AFFF products.

248.    On information and belief, by no later than 2001 Old DuPont manufactured, produced, marketed, and sold Fluorosurfactant Products and/or PFAS feedstocks to some or all of the AFFF product manufacturers for use in their AFFF products that were discharged into the environment and harmed Plaintiffs.

249.    DuPont had been studying the potential toxicity of PFOA since at least the 1960s and knew that it was contaminating drinking water drawn from the Ohio River and did not disclose to the public or to government regulators what they knew about the substance's potential effects on humans, animals, or the environment.[10]

250.    By December 2005, the EPA uncovered evidence that DuPont concealed the environmental and health effects of PFOA, and the EPA announced the "Largest Environmental Administrative Penalty in Agency History." The EPA fined DuPont $16,500,000 for violating the Toxic Substances Control Act "Section 8(e)—the requirement that companies report to the EPA substantial risk information about chemicals they manufacture, process or distribute in commerce."[11]

251.    By July 2011, DuPont could no longer credibly dispute the human toxicity of

accessed March 11, 2025).

[10] EPA, Consent Agreement and Final Order, *In re E.I. DuPont de Nemours & Co.*, TSCA Docket TSCA-HQ-2004-0016 (Dec. 14, 2005), available at https://www.epa.gov/sites/default/files/documents/dupontpfoasettlement121405.pdf (last accessed March 11, 2025).

[11] *Id.*

1    PFOA, which it continued to manufacture. The "C8 Science Panel" created as part of the

2    settlement of a class action over DuPont's releases from the Washington Works plant had reviewed

3    the available scientific evidence and notified DuPont of a "probable link"[12] between PFOA

4    exposure and the serious (and potentially fatal) conditions of pregnancy-induced hypertension and

5    preeclampsia.[13] By October 2012, the C8 Science Panel had notified DuPont of a probable link

6    between PFOA and five other conditions—high cholesterol, kidney cancer, thyroid disease,

7    testicular cancer, and ulcerative colitis.

8        252.    In July 2015, DuPont spun off its chemicals division by creating Chemours as a

9    new publicly traded company, once wholly owned by DuPont. By mid-2015, DuPont had dumped

10   its perfluorinated chemical liabilities into the lap of the new Chemours.

11       253.    Defendants also knew or should have known that: (a) users of AFFF would likely

12   include fire and rescue training organizations and their personnel; (b) fire and rescue personnel

13   were foreseeable users of AFFF containing or degrading into PFOA and/or PFOS in both training

14   and real-life fire emergency scenarios; (c) PFOA and PFOS are dangerous to human health when

15   used by fire and rescue personnel; (d) fire and rescue personnel foreseeably lacked knowledge of

16   these dangers; and, (e) fire and rescue personnel would require warnings of these dangers and/or

17   affirmative instructions in the use of AFFF.

18       254.    Notwithstanding this knowledge, Defendants negligently and carelessly: (1)

19   designed, manufactured, marketed, purchased, supplied, and/or sold PFOA/PFOS; (2) issued

20   instructions on how AFFF should be used and disposed of; (3) failed to recall and/or warn the

21   users of AFFF of the dangers to human health that result from the standard use and disposal of

22   these products; negligently designed products containing or degrading into PFOA and/or PFOS;

23   and (5) further failed and refused to issue the appropriate warnings and/or recalls to the users of

---

[12] Under the settlement, "probable link" means that given the available scientific evidence, it is more likely than not that among class members a connection exists between PFOA/C8 exposure and a particular human disease. *See* C8 Panel, *C8 Probable Link Reports*, available at http://www.c8sciencepanel.org/prob_link.html (last accessed March 11, 2025).

[13] *See* C8 Science Panel, Status Report: PFOA (C8) exposure and pregnancy outcome among participants in the C8 Health Project (July 15, 2011), available at http://www.c8sciencepanel.org/pdfs/Status_Report_C8_and_pregnancy_outcome_15July2011.pdf (last accessed March 11, 2025).

AFFF containing PFOA and/or PFOS, notwithstanding the fact that Defendants knew the identity of the purchasers of the PFOA/PFOS.

255.    Further, Defendants failed to disclose to environmental regulators and the general public the likely existence of and health risks to the public caused by widespread PFOA and PFOS contamination in drinking water supplies across the country as a result of AFFF usage.

256.    As a direct result of Defendants' acts alleged in this Complaint, Plaintiffs suffered severe health effects caused by exposure to AFFF containing PFOA and/or PFOS.  As a direct and proximate result, Plaintiffs incurred substantial harm, both economic and non-economic.

257.    Defendants had a duty and breached their duty to evaluate and test such products adequately and thoroughly to determine their potential human health impacts before they sold such products. They also had a duty and breached their duty to minimize the risk of harm to human health caused by PFOA and PFOS.

**D.    The Impact of PFOA and PFOS on the Plaintiffs**

258.    Plaintiffs have been significantly and continuously exposed to PFOA and PFOS over many years as a result of Defendants' conduct.

259.    Plaintiffs have been diagnosed with the serious injuries set forth above, including kidney cancer, testicular cancer, thyroid disease, and ulcerative colitis.

260.    Plaintiffs' injuries were caused by Defendants' Fluorosurfactant Products.

261.    The use of Fluorosurfactant Products as directed and intended by the manufacturers caused Plaintiffs' exposure to PFOA and PFOS, which caused Plaintiffs' injuries.

262.    Therefore, as a direct and proximate result of Defendants' tortious conduct as set forth in this complaint, Plaintiffs were damaged in the following ways:

        a.    Plaintiffs suffered physical pain and mental anguish;

        b.    Plaintiffs incurred hospital, medical, pharmaceutical and other expenses; and

        c.    Plaintiffs experienced undue stress related to their diagnoses, medical conditions, and uncertainty about their prognoses.

**FIRST CAUSE OF ACTION**

**STRICT LIABILITY – DESIGN DEFECT – CONSUMER EXPECTATION TEST**

263.    Plaintiffs reallege and reaffirm all allegations set forth in the preceding paragraphs.

264.    Plaintiffs were harmed by Fluorosurfactant Products which were designed, manufactured, marketed, sold and/or distributed by Defendants, and which were defectively designed, did not include sufficient instructions, and did not include sufficient warning of potential safety hazards of human exposure.

265.    Defendants' Fluorosurfactant Products did not perform as safely as an ordinary consumer would have expected them to perform when used or misused in an intended or reasonably foreseeable way.

266.    Defendants represented, asserted, claimed and/or warranted that their Fluorosurfactant Products could be used in conformity with accompanying instructions and labels in a manner that would not cause injury or damage.

267.    As manufacturers, designers, refiners, formulators, distributors, suppliers, sellers, and marketers of Fluorosurfactant Products, Defendants owed a duty to all persons whom Defendants' products might foreseeably harm, including Plaintiffs, not to manufacture, sell, or market any product which is unreasonably dangerous for its intended and foreseeable uses.

268.    Defendants' Fluorosurfactant Products were used by or near Plaintiffs in a reasonably foreseeable manner and without substantial change in the condition in which the products were sold.

269.    Defendants knew, or should have known, that use of Defendants' Fluorosurfactant Products in their intended manner would result in exposure of humans to PFOA and/or PFOS and to resulting injury.

270.    Furthermore, Defendants knew, or should have known, that their Fluorosurfactant Products were toxic and associated with medical conditions in humans.

271.    Plaintiffs were, are and will continue to be harmed by Defendants' defectively designed Fluorosurfactant Products.

272.    Defendants' Fluorosurfactant Products' failure to perform safely was a substantial

factor in causing Plaintiffs' harm.

273.    As a direct and proximate result of Defendants' unreasonably dangerous design, manufacture, and sale of PFAS-containing products and/or AFFF, Plaintiffs suffered personal injuries as discussed throughout this Complaint.

274.    Defendants knew that it was substantially certain that their acts and omissions described above would threaten the health of users like Plaintiffs.  Defendants committed each of the above-described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious and/or reckless disregard for the health and safety of others, and for the Plaintiffs' health.

**SECOND CAUSE OF ACTION**

**STRICT LIABILITY – DESIGN DEFECT – RISK BENEFIT TEST**

275.    Plaintiffs reallege and reaffirm all allegations set forth in the preceding paragraphs.

276.    Plaintiffs were harmed by Fluorosurfactant Products designed, manufactured, marketed, sold and/or distributed by Defendants.

277.    Plaintiffs were, are, and will continue to be harmed by Defendants' defectively designed Fluorosurfactant Products.

278.    The design of Defendants' Fluorosurfactant Products was a substantial factor in causing harm to Plaintiffs.

279.    The gravity of the harm to Plaintiffs resulting from Defendants' Fluorosurfactant Products outweighs the benefits of the Products' design.

280.    The likelihood that PFAS-containing products and/or AFFF would cause injuries to Plaintiffs far outweighed any burden on Defendants to adopt an alternative design, and outweighed the adverse effect, if any, of such alternative design on the utility of the product.

281.    At the time of manufacture, there were safer alternative designs that were feasible, cost effective, and advantageous, including not using PFOS, PFOA and/or their precursor chemicals in products.

282.    Defendants' conduct lacked any care and was an extreme departure from what a reasonably careful company would do in the same situation to prevent harm to individuals, and

1   thus Defendants were grossly negligent.

2        283.   As a direct and proximate result of Defendants' unreasonably dangerous design,

3   manufacture, and sale of PFAS-containing products and/or AFFF, Plaintiffs suffered personal

4   injuries as discussed throughout this Complaint.

5        284.   Defendants knew that it was substantially certain that their acts and omissions

6   described above would threaten the health of users and the public, including Plaintiffs. Defendants

7   committed each of the above-described acts and omissions knowingly, willfully, and/or with fraud,

8   oppression, or malice, and with conscious and/or reckless disregard for the health and safety of

9   others, and for the Plaintiffs' health.

10                 **THIRD CAUSE OF ACTION**

11              **STRICT LIABILITY – FAILURE TO WARN**

12        285.   Plaintiffs reallege and reaffirm all allegations set forth in the preceding paragraphs.

13        286.   PFAS-containing products and/or AFFF are unreasonably dangerous for their

14   reasonably anticipated uses such that a risk of harm is inherent for the following reasons:

15        a.     Users of AFFF are exposed to PFOA and PFOS when AFFF is used, handled, or

16               disposed of in its foreseeable and intended manner;

17        b.     PFOA and PFOS are likely to infiltrate the water supply when AFFF is used,

18               handled, or disposed of in its foreseeable and intended manner;

19        c.     PFOA and PFOS exposure may cause diseases and cancers like Plaintiffs;

20        d.     PFOA and/or PFOS persist and bioaccumulate in the human body; and

21        e.     PFOA and/or PFOS pose significant threats to human and environmental health.

22        287.   As manufacturers, distributors, suppliers, sellers, and marketers of Fluorosurfactant

23   Products, Defendants had a duty to issue warnings to consumers, users, and foreseeable

24   bystanders, including Plaintiffs, of the risks posed by exposure to PFAS (including PFOA and

25   PFOS).

26        288.   Defendants knew that their Fluorosurfactant Products would be purchased,

27   transported, stored, handled, and used without notice of the hazards that PFOA and PFOS pose to

28   human health.

289.    Defendants breached their duty to warn by unreasonably failing to provide Plaintiffs, public officials, purchasers, downstream handlers, and/or the general public with warnings about the potential and/or actual contamination of the environment by PFOA and PFOS, despite Defendants' knowledge that PFOA and PFOS were real and potential threats to the environment.

290.    At all relevant times, including the time AFFF products were marketed, Defendants knew of or should have reasonably foreseen the human health risks associated with PFAS-containing products and/or AFFF, and Defendants failed to provide a warning that would lead an ordinary reasonable user or handler of a product to contemplate the dangers associated with PFAS-containing products and/or or an instruction that would have prevented the harm to Plaintiffs.

291.    Plaintiffs were exposed to PFAS-containing AFFF either directly or through their drinking water supply.

292.    At the time and place of Plaintiffs' exposure, Defendants' Fluorosurfactant Products were used in a reasonably foreseeable manner and without substantial changes in the condition in which the products were sold.

293.    Although Defendants were aware of the dangers posed by AFFF and Fluorosurfactant Products, the dangers were unknown and not foreseeable to Plaintiffs.

294.    As a direct and proximate result of Defendants' failure to warn, Plaintiffs suffered personal injuries and costs and damages resulting therefrom.

295.    The Defendants' failure to warn constitutes a causative nexus in Plaintiffs' injuries.

296.    Defendants knew that it was substantially certain that its acts and omissions described above would threaten the health of users like Plaintiff.  Defendants committed each of the above-described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious and/or reckless disregard for the health and safety of others and for the Plaintiffs' health.

### FOURTH CAUSE OF ACTION

### NEGLIGENCE – MANUFACTURER OR SUPPLIER – DUTY TO WARN

297.    Plaintiffs reallege and reaffirm all allegations set forth in the preceding paragraphs.

298. As manufacturers, refiners, formulators, distributors, suppliers, sellers, marketers, shippers, and/or handlers of Fluorosurfactant Products, Defendants owed a duty to Plaintiffs, as well as to all persons whom Defendants' Fluorosurfactant Products might foreseeably harm, to exercise due care in the instructing, labeling, and warning of the handling, control, use, and disposal of Defendants' Fluorosurfactant Products.

299. Despite the fact that Defendants knew that PFOA and PFOS are toxic and present significant risks to human health, Defendants negligently: (a) designed, manufactured, formulated, handled, labeled, instructed, controlled, marketed, promoted, and/or sold Fluorosurfactant Products; (b) issued instructions on how Fluorosurfactant Products should be used and disposed of, thus improperly permitting Plaintiffs' exposure to PFOA and/or PFOS; (c) failed to warn the users of Fluorosurfactant Products of the dangers of exposure inherent in the use of these products; and (d) failed and refused to issue the appropriate warnings to the users of Fluorosurfactant Products regarding the proper use and disposal of these products, notwithstanding the fact that Defendants knew, or could determine with reasonable certainty, the identity of the purchasers of their Fluorosurfactant Products.

300. A reasonable manufacturer, seller, or distributor, under the same or similar circumstances would have warned of the danger or instructed on the safe use of Fluorosurfactant Products.

301. Plaintiffs were, are, and will continue to be harmed.

302. Defendants' failure to warn or instruct was a substantial factor in causing Plaintiffs' harm.

303. Defendants' conduct lacked any care and was an extreme departure from what a reasonably careful company would do in the same situation to prevent harm to others and the environment, and thus Defendants were grossly negligent.

304. As a direct and proximate result of Defendants' above-described acts and omissions, Plaintiffs have incurred, continue to incur, and/or will incur costs and damages related to the PFAS contamination of their Property, including but not limited to the investigation, monitoring, treatment, testing, remediation, removal, and/or disposal of the PFAS contamination,

1    operating, maintenance and consulting costs, legal fees, and diminished property value.

2    305.    Although Defendants were aware of the dangers posed by AFFF and

3    Fluorosurfactant Products, the dangers were unknown and not foreseeable to Plaintiffs.

4    306.    As a direct and proximate result of Defendants' failure to warn, Plaintiffs suffered

5    personal injuries and costs and damages resulting therefrom.

6    307.    The Defendants' failure to warn constitutes a causative nexus in Plaintiffs' injuries.

7    308.    Defendants knew that it was substantially certain that its acts and omissions

8    described above would threaten the health of users and bystanders, including Plaintiffs.

9    Defendants committed each of the above-described acts and omissions knowingly, willfully,

10    and/or with fraud, oppression, or malice, and with conscious and/or reckless disregard for the

11    health and safety of others and for the Plaintiffs' health.

12                    **FIFTH CAUSE OF ACTION**

13                **NEGLIGENCE – FAILURE TO RECALL**

14    309.    Plaintiffs reallege and reaffirm all allegations set forth in the preceding paragraphs.

15    310.    Defendants' Fluorosurfactant Products were designed, manufactured, marketed,

16    distributed and sold without adequate warning of toxicity and potential human health risks.

17    311.    Defendants were negligent by not using reasonable care to warn or instruct about

18    the risks associated with their Fluorosurfactant Products.

19    312.    Defendants knew or reasonably should have known that their Fluorosurfactant

20    Products were dangerous or likely to be dangerous when used or misused in a reasonably

21    foreseeable manner.

22    313.    Defendants knew or reasonably should have known that users and third parties

23    would not realize the dangers.

24    314.    Defendants became aware of the human health risks presented by their

25    Fluorosurfactant Products by no later than the year 2000.

26    315.    Defendants failed to recall their Fluorosurfactant Products.

27    316.    A reasonable manufacturer, seller, or distributor, under the same or similar

28    circumstances would have warned of the dangers or instructed on the safe use of Fluorosurfactant

Products.

317.    Plaintiffs were, are, and will continue to be harmed.

318.    Defendants' failure to recall their Fluorosurfactant Products was a substantial factor in causing Plaintiffs' harm.

319.    Defendants' conduct lacked any care and was an extreme departure from what a reasonably careful company would do in the same situation to prevent harm to others and the environment, and thus Defendants were grossly negligent.

320.    Although Defendants were aware of the dangers posed by AFFF products, the dangers were unknown and not foreseeable to Plaintiffs.

321.    As a direct and proximate result of Defendants' failure to recall, Plaintiffs suffered personal injuries and costs and damages resulting therefrom.

322.    The Defendants' failure to recall constitutes a causative nexus in Plaintiffs' injuries.

323.    Defendants knew that it was substantially certain that their acts and omissions described above would threaten the health of users and the general public, including Plaintiffs. Defendants committed each of the above-described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious and/or reckless disregard for the health and safety of others and for the Plaintiffs' health.

## SIXTH CAUSE OF ACTION

### VIOLATION OF THE UNIFORM VOIDABLE TRANSFER ACT

324.    Plaintiffs reallege and reaffirm all allegations set forth in the preceding paragraphs.

325.    Plaintiffs seek equitable and other relief pursuant to the Uniform Fraudulent Transfer Act ("UVTA") as adopted by the State of California in Cal. Civ. Code Ann. § 3439, against E.I. Dupont de Nemours and Company, The Chemours Company, The Chemours Company FC, LLC, Corteva, Inc., and DuPont De Nemours, Inc. (collectively, the "UVTA Defendants").

326.    Pursuant to Cal. Civ. Code Ann. § 3439, "[a] transfer made or an obligation incurred by a debtor is voidable as to a creditor, whether the claim of the creditor arose before, or within a reasonable time not to exceed four years after, the transfer was made or the obligation

was incurred, if the debtor made the transfer or incurred the obligation as follows:

    a.      With actual intent to hinder, delay, or defraud any creditor of the debtor;

    b.      Without receiving a reasonably equivalent value in exchange for the transfer or obligation of the debtor either:

        A.      Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.

        B.      Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due."

327.    Further, Cal. Civ. Code Ann. § 3439 states that "[i]n determining the actual intent under paragraph (1) of subdivision (a), consideration may be given, among other factors, to any and all of the following: to all relevant factors including, but not limited to, the following: […] whether before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit, whether the transfer was of substantially all of the debtor's assets; […] whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred."

328.    Upon information and belief, in February 2014, E. I. DuPont de Nemours and Company formed The Chemours Company as a wholly owned subsidiary and used it to spin off DuPont's "Performance Chemicals" business line in July 2015.

329.    Upon information and belief, at the time of the spinoff, DuPont's Performance Chemicals division contained the AFFF and/or PFAS business segments. In addition to the transfer of the Performance Chemicals division, Chemours accepted broad assumption of liabilities for DuPont's historical use, manufacture, and discharge of PFAS.

330.    Upon information and belief, at the time of the transfer of its Performance Chemicals business to Chemours, DuPont had been sued, threatened with suit and/or had knowledge of the likelihood of litigation to be filed regarding DuPont's liability for damages and injuries from the manufacture and sale of Fluorosurfactant Products.

331.    Upon information and belief, as a result of the transfer of assets and liabilities described in this Complaint, DuPont limited the availability of assets to cover judgements for all of the liability for damages and injuries from the manufacture and sale of Fluorosurfactant Products.

332.    Upon information and belief, the UTVA Defendants acted (a) with intent to hinder, delay and defraud parties, or (b) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and (i) were engaged or were about to engage in a business for which the remaining assets of Chemours were unreasonably small in relation to the business; or (ii) intended to incur, or believed or reasonably should have believed that The Chemours Company would incur, debts beyond its ability to pay as they became due.

333.    The UVTA Defendants engaged in acts in furtherance of a scheme to transfer E. I. DuPont de Nemours and Company's assets out of the reach of parties, such as the Plaintiffs, that have been damaged as a result of UVTA Defendants' conduct, omissions, and actions as described in this Complaint.

334.    As a result of the transfer of assets and liabilities described in this Complaint, the UVTA Defendants have attempted to limit the availability of assets to cover judgments for all of the liability for damages and injuries from the manufacturing, marketing, distribution and/or sale of Fluorosurfactant Products.

335.    Pursuant to Cal. Civ. Code Ann. § 3439.07, Plaintiffs seek to avoid the transfer of E.I. DuPont de Nemours and Company's liabilities for the claims brought in this Complaint and to hold the UVTA Defendants liable for any damages or other remedies that may be awarded by this Court or a jury under this Complaint.

336.    Plaintiffs further seek all other rights and remedies that may be available to them under UVTA, including prejudgment remedies as available under applicable law, as may be necessary to fully compensate Plaintiffs for the damages and injuries they have suffered as alleged in this Complaint.

## SEVENTH CAUSE OF ACTION

## CIVIL CONSPIRACY

337.    Plaintiffs reallege and reaffirm all allegations set forth in the preceding paragraphs.

338.    At all times relevant herein, Defendants actually knew of the hazards that PFOS and/or PFOA posed to the health of those exposed to these compounds.

339.    Beginning in the 1960s and continuing through the date of the filing of this Complaint, Defendants agreed to engage in unlawful and wrongful acts that caused damage to the Plaintiffs. Each Defendant performed at least one overt act in furtherance of this conspiracy. Specifically, Defendants colluded for the avowed purpose of providing information about Fluorosurfactant Products to the public and the government, with the true, unlawful purposes of:

a.    intentionally misrepresenting to the EPA and the public that their Fluorosurfactant Products were safe and did not pose a risk to human health and the environment;

b.    concealing the dangers of their Fluorosurfactant Products, including the products' characteristics and their propensity to contaminate soil and groundwater, from the government and public by, among other means, repeatedly misrepresenting how Fluorosurfactant Products were being disposed of;

c.    concealing the dangers of PFOA and/or PFOS from consumers and the public; and

d.    using their considerable resources to fight legislation concerning PFOA and/or PFOS.

340.    As a direct and proximate result of Defendants' conspiracy, Defendants' Fluorosurfactant Products at all times relevant to this litigation have:

a.    Caused physical and emotional injuries to Plaintiffs;

b.    Caused Plaintiffs to incur, *inter alia*, medical and treatment costs; non-economic damages; loss of earnings and future earnings; and household expenses; and

c.    required and will continue to require monitoring of Plaintiffs' physical condition.

### TOLLING OF THE STATUTE OF LIMITATIONS

341.    Plaintiffs hereby incorporate by reference the allegations contained within the preceding paragraphs of this Complaint as if restated in full herein.

### Discovery Rule Tolling

342.    Plaintiffs did not know, nor could they have reasonably discovered by the exercise

1    of reasonable diligence, that exposure to fluorochemical products, including AFFF, PFOA, and

2    PFOS was harmful to human health. The risks of said chemicals and AFFF were not obvious to

3    the users of AFFF, nor were they obvious to individuals such as Plaintiffs in the vicinity of AFFF

4    use. Since Plaintiffs could not have reasonably discovered the defects and risks associated with

5    the use of fluorochemical products, they could not protect themselves from exposure to

6    Defendants' fluorochemical products. For this reason, all applicable statutes of limitations have

7    been tolled by operation of the discovery rule with respect to Plaintiffs' claims.

8          343.     Plaintiffs had no way of knowing about the risk of serious injury associated with

9    the use of, and exposure to, AFFF and fluorochemical products until very recently. Further,

10   Plaintiffs could not have discovered, through the exercise of reasonable diligence, that exposure

11   to AFFF, PFOA, PFOS, and other fluorochemical products is harmful to human health within the

12   time period allowed by any applicable statute of limitations.

13         344.     Plaintiffs had no way of knowing about the risk of serious injury associated with

14   the use of, and exposure to, AFFF and fluorochemical products until very recently. Further,

15   Plaintiffs could not have discovered, through the exercise of reasonable diligence, that exposure

16   to AFFF is harmful to human health within the time period allowed by any applicable statute of

17   limitations.

18         345.     During the relevant times, Plaintiffs did not possess specialized scientific or

19   medical knowledge. Plaintiffs did not, and could not, have discovered or known facts that could

20   cause a reasonable person to suspect the risk associated with the use of Defendants' fluorochemical

21   products. Further, a reasonable and diligent investigation by Plaintiffs earlier would not have

22   disclosed that AFFF could cause personal injury.

23         346.     Wherefore, all applicable statutes of limitations pertaining to Plaintiffs' claims

24   have been tolled by operation of the discovery rule.

25                            **Fraudulent Concealment**

26         347.     Rather than disclose critical safety and health information regarding its AFFF and

27   fluorochemical products, Defendants have consistently and falsely represented the safety of AFFF

28   products.

1    348.    This fraudulent concealment continues to the present day.

2    349.    Wherefore, due to Defendants' knowing and active fraudulent concealment and

3    denial of the facts alleged herein through the relevant time for this action, all applicable statutes

4    of limitations have also been tolled.

5                                        **Estoppel**

6    350.    Defendants were under a continuous duty to consumers, end users, and other

7    persons, such as Plaintiffs, coming into contact with their fluorochemical products, to provide

8    truthful and reliable safety information concerning their products and the risks associated with

9    their use, as well as exposure to AFFF.

10    351.    Rather than fulfill this duty, Defendants knowingly, affirmatively, and actively

11    concealed important safety information and warnings concerning AFFF and the health risks

12    associated with the same.

13    352.    Wherefore, Defendants are estopped from relying on any statute of limitations in

14    defense of this action.

15                                **PUNITIVE DAMAGES**

16    353.    Under the applicable laws of the State of California, Plaintiffs seek punitive

17    damages due to the wanton and willful acts and/or omissions of Defendants as set forth and alleged

18    throughout this Complaint.

19                                **PRAYER FOR RELIEF**

20    354.    Plaintiffs pray for judgment against Defendants, jointly and severally, as follows:

21            a.    Compensatory damages and all other special damages according to proof

22                  including, but not limited to past and future medical and treatment costs;

23                  non-economic damages; loss of earnings and future earnings; and

24                  household expenses, among others;

25            b.    Avoiding the transfer of DuPont's liabilities for the claims brought in this

26                  Complaint;

27            c.    Exemplary and Punitive damages;

28            d.    Consequential damages;

|   |   |   |
|---|---|---|
| 1 | e. | Pre-judgment and post-judgment interest; |
| 2 | f. | Attorney's fees; and |
| 3 | g. | Any other and further relief as the Court deems just, proper, and equitable. |

### JURY TRIAL DEMANDED

Each Plaintiff hereby demands a trial by a jury on all of the triable issues of this complaint. Plaintiffs do not seek to have their claims tried jointly.

Dated: July 23, 2025

/s/ David Fernandes
David Fernandes (SBN 280944)
**BARON & BUDD, P.C.**
Holly Werkema (TX Bar No. 24081202)
*(Pro Hac Vice Forthcoming)*
hwerkema@baronbudd.com
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX 75219
Tel.: (214) 521-3605
Fax: (214) 279-9915
Email: dfernandes@baronbudd.com

**COSSICH, SUMICH, PARSIOLA
& TAYLOR, LLC**
Philip F. Cossich, Jr. (LA Bar No. 1788)
*(Pro Hac Vice Forthcoming)*
pcossich@cossichlaw.com
Christina M. Cossich (LA Bar No. 32407)
*(Pro Hac Vice Forthcoming)*
ccossich@cossichlaw.com
8397 Highway 23, Suite 100
Belle Chasse, LA 70037
Telephone: (504) 394-9000

*Attorneys for Plaintiffs*